Jon W. ACKERSON, Plaintiff,

v.

**KENTUCKY JUDICIAL RETIREMENT
AND REMOVAL COMMISSION,**
Defendant.

Civ. A. No. 91–0679–L(CS).

United States District Court,
W.D. Kentucky,
Louisville Division.

Oct. 25, 1991.

Donald L. Cox, Lynch, Cox, Gilman & Mahan, Louisville, Ky., for plaintiff.

George F. Rabe, Lexington, Ky., for defendant.

## MEMORANDUM OPINION

SIMPSON, District Judge.

The plaintiff, Jon W. Ackerson (hereinafter "Ackerson"), is a candidate for election to the office of Judge of the Kentucky Court of Appeals. He has brought this action against the Kentucky Judicial Retirement and Removal Commission (hereinafter "Commission") pursuant to 42 U.S.C. § 1983, alleging that his freedom of speech, guaranteed by the First, Fifth and Fourteenth Amendments to the United States Constitution, is compromised and chilled by virtue of a canon of the Kentucky Code of Judicial Conduct which regulates campaign conduct of candidates for elective judicial office.

The matter is now before the court for consideration of the plaintiff's motion for a restraining order and preliminary injunction.

Upon notice to both parties, a hearing was held on October 16, 1991. No evidence was offered other than the verified complaint. The court received lengthy argument of counsel. Ackerson has submitted a verified memorandum in support of his motion. Counsel have furnished the court with additional case citations which the court has considered.

The election will take place on November 5, 1991, less than two weeks hence. The brevity of time belies the importance of the issue raised. In considering the motion, we are required to consider the ground rules which govern campaigns for elective judicial office in the Commonwealth of Kentucky.

Kentucky subjects candidates for judicial office to non-partisan election. The Kentucky Code of Judicial Conduct, set out as Rule 4.300 of the Rules of the Kentucky Supreme Court, provides at Canon 7, Subsection B., guidance and regulations for the conduct of judicial election campaigns. The rules are not merely advisory. The Commission, created pursuant to Section 121 of the Kentucky Constitution, is vested with jurisdiction to discipline candidates who violate the Code of Judicial Conduct and to refer them to the Kentucky Bar Association for possible suspension or disbarment from the practice of law. Kentucky Supreme Court Rule 4.020.

The particular canon Ackerson challenges provides as follows:

CANON 7: A judge should refrain from political activity inappropriate to his judicial office.

. . . .

B. Campaign conduct.

(1) A candidate, including an incumbent judge for a judicial office that is filled either by public election between competing candidates or on the basis of a merit system election:

. . . .

(c) should not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office; make statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court; or misrepresent his identity, qualifications, present position, or other facts.

In order to establish entitlement to preliminary injunctive relief, this court is required to consider four factors:

1. Whether the movant has shown a strong or substantial likelihood of success on the merits;

2. Whether the movant has shown irreparable injury;

3. Whether the preliminary injunction could harm third parties;

4. Whether the public interest would be served by issuing the preliminary injunction.

*Southern Milk Sales, Inc. v. Martin,* 924 F.2d 98, 102–103 (6th Cir.1991), citing *In re DeLorean Motor Co.,* 755 F.2d 1223, 1228 (6th Cir.1985); *see also Gaston Drugs, Inc. v. Metropolitan Life Ins. Co.,* 823 F.2d 984, 988 (6th Cir.1987), citing *Frisch's Restaurant, Inc. v. Shoney's, Inc.,* 759 F.2d 1261, 1263 (6th Cir.1985).

Ackerson contends that Subsection B.(1)(c) of Canon 7 is violative of the First, Fifth and Fourteenth Amendments to the United States Constitution in that (1) it is overbroad, (2) it constitutes a prior restraint, and (3) it is impermissibly vague and therefore has a chilling effect on his freedom of speech during the election campaign inasmuch as it prohibits discussion of certain legal or political issues.

Specifically, Ackerson wishes to make pledges, promises and statements which would commit or appear to commit him with respect to administrative matters in the Kentucky Court of Appeals. These matters include an alleged backlog of cases, methods of assignment of cases, numbers of pending cases, hiring and firing of employees, and administrative expenses relating to travel. Ackerson fears discipline by the Commission because such issues, he asserts, are likely to come before that court.

Ackerson also wishes to make statements which would commit or appear to commit him on general legal issues which he asserts are not presently before the Kentucky Court of Appeals in any identifiable cases. Such issues include a general discussion of the right of privacy, the role of United States Supreme Court precedent, and adoption of federal evidence rules in Kentucky state courts.

Ackerson makes no claim of entitlement to make pledges or promises of adjudicatory conduct should he be elected. He does not contend that he has a right to make statements committing or appearing to commit him with respect to cases now before the Kentucky Court of Appeals nor does he claim a First Amendment right to misrepresent any facts.

 We must first address the issue of Ackerson's standing to sue in this matter and the ripeness of his claim.

> Article III of the Constitution limits the "judicial power" of the United States to the resolution of "cases" and "controversies".... The power to declare the rights of individuals and to measure the authority of governments, [the United States Supreme Court] said 90 years ago, "is legitimate only in the last resort, and as a necessity in the determination of real, earnest and vital controversy."

*Chicago & Grand Trunk R. Co. v. Wellman*, 143 U.S. 339, 345, 12 S.Ct. 400, 402, 36 L.Ed. 176 (1892).

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 757, 70 L.Ed.2d 700 (1982).

The standing of a person who challenges punitive regulation on First Amendment grounds has been implicitly recognized, even though such person has not yet been cited or charged. *Leverett v. City of Pinellas Park*, 775 F.2d 1536 (11th Cir.1985).

It has been held that where a plaintiff presents an anticipatory challenge, standing to maintain the action will depend upon whether the threat of prosecution under the regulation is genuine, real or immediate rather than imaginary or speculative. *See, i.e., Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Hardwick v. Bowers*, 760 F.2d 1202 (11th Cir. 1985).

Ackerson's concerns are not merely imaginary, nor are they so speculative as to be unripe. While he has not been threatened with disciplinary action as yet, Ackerson is not required to choose between limiting his campaign speech or taking his chances with the Commission where, as here, a real possibility exists that sanctions will be sought.

The Commission has not stayed its hand before. It has proceeded with vigor to assert its position against judicial candidates. The issues Ackerson raises are new. While the Commission's counsel has expressed doubts that Ackerson would be disciplined for making statements on court administrative issues, this is of little comfort to him. The issue has never been presented to or ruled upon by the Commission and it is not bound by its counsel's statements in oral argument. Furthermore, the Commission's attorney has stated his view that no judicial candidate should be permitted to commit on any legal issue, whether it is likely or unlikely to come before the court. Since the canon in issue is more lenient, Ackerson's concerns as to what course the Commission may take against him are legitimate.

We find therefore, that:

> [T]he plaintiff has "a personal stake and interest [which is] arrayed against persons with adverse legal interests in a sufficiently immediate adversary context to warrant declaratory relief" consideration. *Poe v. Menghini*, 339 F.Supp. 986 (D.Kan.1972) citing *Golden v. Zwickler*, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969).

*Durham v. Brock*, 498 F.Supp. 213, 217–18 (M.D.Tenn.1980), *affm'd*, 698 F.2d 1218 (6th Cir.1982).

 As noted by the United States Court of Appeals for the Fifth Circuit,

> While courts have an interest in having concrete factual situations presented for judicial consideration, this interest would not be advanced by withholding anticipatory relief where, as here, the course of conduct in which the plaintiff plans to engage is clear to the court at the time the suit is filed.

*Morial v. Judiciary Comm'n*, 565 F.2d 295, 298 (5th Cir.1977), *cert. denied*, 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (1978).

We conclude that Ackerson has standing to maintain this § 1983 action and that the

matter is ripe for adjudication by the court at this time.

We next consider whether Ackerson has shown a strong or substantial likelihood of success on the merits.

It is axiomatic that candidates for elected office do not lose the protection of the First Amendment when they choose to run in a political race.

The candidate, no less than any other person, has a First Amendment right to engage in the discussion of public issues and vigorously and tirelessly to advocate his own election and the election of other candidates. Indeed, it is of particular importance that candidates have the unfettered opportunity to make their views known so that the electorate may intelligently evaluate the candidates' personal qualities and their positions on vital public issues before choosing among them on election day.

*Buckley v. Valeo*, 424 U.S. 1, 52–53, 96 S.Ct. 612, 651, 46 L.Ed.2d 659 (1976).

While candidates for elective judicial office are not without the protection of the First Amendment, their campaign conduct has been regulated to a greater degree than non-judicial candidates. In the words of the Fifth Circuit:

Because the judicial office is different in key respects from other offices, the state may regulate its judges with the differences in mind. For example the contours of the judicial function make inappropriate the same kind of particularized pledges of conduct in office that are the very stuff of campaigns for most non-judicial offices. A candidate for the mayorality can and often should announce his determination to effect some program, to reach a particular result on some question of city policy, or to advance the interests of a particular group. It is expected that his decisions in office may be predetermined by campaign commitment. Not so the candidate for judicial office. He cannot, consistent with the proper exercise of his judicial powers, bind himself to decide particular cases in order to achieve a given programmatic result.

*Morial v. Judiciary Comm'n,* 565 F.2d at 305.

■ The permissibility of a state-imposed restriction on freedom of speech hinges upon whether a compelling state interest is demonstrated and whether means have been employed to narrowly draft the regulation so as to avoid unnecessary abridgement of constitutional rights. *First National Bank of Boston v. Bellotti,* 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978). *See also American Civil Liberties Union v. The Florida Bar,* 744 F.Supp. 1094 (N.D.Fla.1990).

■ We have no difficulty finding a compelling state interest in an impartial judiciary. *Morial,* 565 F.2d at 302. An even-handed, unbiased and impartial judiciary is one of the pillars upon which our system of government rests. To the degree appropriate, the conduct of judicial elections in the Commonwealth of Kentucky may be regulated so as to meet that interest, even if freedom of speech is thereby constrained.

In a case preceding the adoption of the current version of Canon 7, the Kentucky Supreme Court correctly delineated the proper basis for limiting a judicial candidate's speech, that being the state's interest in protecting and preserving the integrity and objectivity of the judicial system. *J.C.J.D. v. R.J.C.R.,* 803 S.W.2d 953 at 956 (Ky.1991).

We turn our attention, then, to whether the regulation in question is sufficiently " 'closely drawn to avoid unnecessary abridgement....' *Buckley v. Valeo,* 424 U.S., at 25, 96 S.Ct., at 638...." *First National Bank of Boston,* 98 S.Ct. at 1421.

I

■ We first address Ackerson's desire to make campaign pledges, promises and commitments on issues of court administration.

The canon does not limit its strictures to substantive matters involving a court's adjudicatory function. Rather, it prohibits, in broad language, pledges and promises of conduct in office and commitments with respect to issues likely to come before the

court. Thus, as Ackerson points out, promises and commitments on administrative issues are not excluded from, and appear to be covered by, the literal language of the canon.

There is no compelling state interest which justifies limiting a judicial candidate's speech on court administrative issues. The Commission has not argued otherwise. Its counsel indicated that, while the Commission has never considered the issue, he doubted it would discipline Ackerson on this basis. We consider it necessary to address the matter, however, since the Commission has not taken any binding action nor is it bound by its counsel's predictions.

The state's interest, as was described in *J.C.J.D.*, is in preserving the impartiality of the judiciary. Impartiality is an attribute of the exercise of a court's adjudicatory power, not its administrative function.

Without a compelling state interest to justify it, constraint on Ackerson's campaign speech on the subject of court administration is an unnecessary abridgement of his First Amendment rights. The overbreadth of the canon in this regard is real, and substantial, in light of the context of the proffered speech in an election campaign in which a full and robust debate is in the interest of the electorate. This is true even in light of the otherwise proper constraint placed by the canon on campaign speech in which the objectivity of the court is protected.

> [W]here a statute regulates expressive conduct, the scope of the statute does not render it unconstitutional unless its overbreadth is not only "real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973).

*Osborne v. Ohio*, 495 U.S. 103, 110 S.Ct. 1691, 1697, 109 L.Ed.2d 98, *reh'g denied*, —— U.S. ——, 110 S.Ct. 2605, 110 L.Ed.2d 285 (1990).

■ In finding the canon overbroad, and its consequent restraint on campaign speech in the area of court administration

impermissible, we need not void the entire regulation.

> Even where a statute at its margins infringes on protected expression, "facial invalidation is inappropriate if the 'remainder of the statute … covers a whole range of easily identifiable and constitutionally proscribable … conduct….'" *New York v. Ferber*, 458 U.S. 747, at 770, n. 25, 102 S.Ct. 3348, at 3362 n. 25, 73 L.Ed.2d 1113 (1982).

*Osborne*, 110 S.Ct. at 1697.

Thus, while we find that Ackerson has shown a strong likelihood of success on the merits, we shall tailor our preliminary relief without finding such a facial invalidity as to foreclose enforcement of the canon as a whole.

## II

■ We next address Ackerson's desire to make campaign statements committing or appearing to commit him with respect to legal issues which are not presently before the Kentucky Court of Appeals but which are likely to come before that court.

Ackerson's challenge to the canon has two prongs. The first concerns the canon's prohibition against campaign statements which "appear" to commit the candidate. Ackerson alleges that this is impermissibly vague, thereby subjecting him to the risk of discriminatory enforcement. *Gentile v. State Bar of Nevada*, —— U.S. ——, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991).

We reject this contention. The canon's proscription of the appearance of a commitment *obviously* addresses commitments made indirectly as opposed to those made directly. It is axiomatic that if one may not do something directly, one may not do it indirectly. This is not impermissibly vague.

■ The second prong of Ackerson's challenge concerns the canon's *prohibition* of statements committing the candidate with respect to issues which are "likely to come before the court." Ackerson argues that any issue may come before the Kentucky Court of Appeals and that the likelihood is difficult to ascertain or predict. He

contends that this renders the canon impermissibly vague. Also, Ackerson argues that, irrespective of vagueness, he should have a First Amendment right to address a wide variety of legal issues, excepting only those which are presently and directly before the Kentucky Court of Appeals.

We reject the contention that this portion of the canon is impermissibly vague. We also reject Ackerson's assertion that he should be permitted to commit himself with respect to all legal issues except those that are now before the Kentucky Court of Appeals.

The canon does not prohibit all speech by a judicial candidate on legal issues. A candidate may fully discuss, debate, and commit himself with respect to legal issues which are unlikely to come before the court. A candidate may also fully discuss and debate legal issues which are likely to come before the court. It is only with respect to the latter that the candidate is prohibited from making direct or indirect commitments.

We find that there is a compelling state interest in so limiting a judicial candidate's speech, because the making of campaign commitments on issues likely to come before the court tends to undermine the fundamental fairness and impartiality of the legal system. The canon is closely tailored to this end.

All candidates for elective office, including judicial candidates, presumably come equipped with opinions and predilections which are the result of their life experience. A judge, however, must cast these aside, saving only his or her intrinsic notion of fundamental fairness. The canon recognizes that pre-election commitments by judicial candidates impair the integrity of the court by making the candidate appear to have pre-judged an issue without benefit of argument of counsel, applicable law, and the particular facts presented in each case.

It is undoubtedly true that any issue may be presented in court at any time. If a judicial candidate is unable to gauge the likelihood of an issue coming before his court, and is therefore constrained by caution so as to avoid making a pre-election commitment with respect to such an issue, we believe this constraint on First Amendment speech is permissible and proper when balanced against the necessity of maintaining the impartiality of the legal process. This interest is simply too great to allow judicial campaigns to degenerate into a contest of which candidate can make more commitments to the electorate on legal issues likely to come before him or her.

We therefore find that the canon is sufficiently and closely drawn so as to avoid unnecessary abridgement of a judicial candidate's right of free speech during the campaign. We also find the canon is neither vague nor overbroad in this regard.

We conclude that Ackerson's challenges to the canon on the aforementioned grounds must fail and that he therefore has not shown a likelihood of success on the merits.

### III

We next must address the issue of irreparable injury. Where a deprivation of First Amendment freedoms is shown, even for a minimal period of time, irreparable injury is presumed. *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976). *See also, Newsom v. Norris*, 888 F.2d 371 (6th Cir.1989). We find there is no harm to third parties which would result from the issuance of a temporary restraining order or preliminary injunction, nor has any been articulated by the parties. The public interest has been addressed in this opinion by inference. We now specifically find that the public interest is served by the issuance of the preliminary injunction for the reasons articulated both with respect to the impermissible constraint on Ackerson's constitutional rights as well as the interests of an informed electorate to a democratic election process which is guaranteed by the Kentucky Constitution. *J.C.J.D.*, 803 S.W.2d at 956.

For the reasons set forth, a temporary restraining order and preliminary injunction will issue enjoining the Commission from enforcing or taking action to discipline Ackerson for violation of Kentucky

Supreme Court Rule 4.300, Canon 7, Subsection B.(1)(c) with respect to pledges and promises of conduct and statements committing or appearing to commit him regarding court administrative issues and from referring any violation thereof to the Kentucky Bar Association for disciplinary action, so long as said pledges, promises and statements are otherwise in conformity with the requirements of the canon.

The circumstances asserted here justify dispensation with security. No bond will be required.