**Jed K. DETERS, Appellant,**

v.

**JUDICIAL RETIREMENT AND REMOVAL COMMISSION, Appellee.**

No. 93–SC–076–RR.

Supreme Court of Kentucky.

March 24, 1994.

Thomas Wesley Bosse, Deters, Benzinger & Lavelle, P.S.C., Covington, for appellant.

Jeffrey A. Darling, Lyon, Golibersuch & Darling, P.S.C., James D. Lawson, Executive Secretary, Judicial Retirement and Removal Com'n, Lexington, for appellee.

SPAIN, Justice.

Appellant was found by the Judicial Retirement and Removal Commission (Commission) to have twice violated Supreme Court Rule 4.020(1)(b)(v) and Canon 7 B(1)(c) of The Code of Judicial Conduct, Rule 4.300, on November 3 and 4, 1991, while he was a candidate for election as district judge, for which he was publicly censured. He appeals as a matter of right. We affirm.

It was stipulated before the Commission that on the above dates, campaign officials for Mr. Deters, with his knowledge and approval, caused political advertisements to be run in *The Messenger,* a Catholic newspaper, and in *The Kentucky Post,* a newspaper of general circulation in Northern Kentucky, which contained in bold print the statement: "Jed Deters is a Pro–Life Candidate." Mr. Deters was one of seven candidates in the November 5, 1991, special election for the remainder of an unexpired term for a judgeship in the 16th Judicial District, comprising Kenton County.

In the same campaign, Mr. Deters had earlier appeared before the Commission on October 11, 1991, to participate in an informal conference concerning a complaint that he had distributed other campaign materials in which he identified himself to be a member of a particular political party, in violation of Canon 7 A(2) of The Code of Judicial Conduct. Following that conference, Mr. Deters agreed to accept a public reprimand without formal proof, and on October 25, 1991, the Commission issued an Order of Public Censure against him.

The subsequent charges regarding the newspaper advertisements were the result of a complaint filed on November 11, 1991, after Mr. Deters lost the district judge's race on November 5. Following the filing of formal charges and Mr. Deters' filing of an Answer in July 1992, the Commission held a full hearing on September 23, 1992, at which he appeared with counsel, testified, and offered other evidence.

Canon 7 B(1)(c) states that a candidate for a judicial office:

> should not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office; make statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court; or misrepresent his identity, qualifications, present position, or other facts.

The Commission entered its Findings of Fact, Conclusions of Law and Final Order of public censure of Mr. Deters on February 1, 1993. It concluded that, based upon clear and convincing evidence, it was proved that Mr. Deters:

> publicly announced his view on the abortion issue for the admitted purpose of obtaining support from voters interested in that issue. In doing so, he attempted to obtain an unwarranted and illegal advantage in the election over his opponents. In so acting, he violated Canon 7 B(1)(c) by making statements that commit or appear to commit the candidate to a position with respect to cases, controversies or issues that are likely to come before the court.

On this appeal, Mr. Deters raises four issues; first, that the Commission was without jurisdiction to sanction him; second, that the abortion issue was not likely to come before the Kenton County District Court; third, that he had a constitutionally protected right to discuss abortion in the public forum; and last, that the State has no compelling interest in prohibiting "all forms of a candidate's speech."

### I.

■ Although Mr. Deters concedes that the Commission had jurisdiction over his conduct during the period of his candidacy for judicial office, he argues that once his candidacy terminated (by his defeat), so did the jurisdiction of the Commission over him. He cites the language of SCR 4.020 that:

(1) Commission shall have authority:

. . . . .

> (b) to impose the sanctions [of admonition, private reprimand, public reprimand or censure] upon any judge . . . or lawyer *while* a candidate for judicial office . . . (emphasis added).

In addition, he cites SCR 4.000:

> This Part IV of these rules applies to all proceedings before the Judicial Retirement and Removal Commission involving the discipline, retirement or removal of . . . [judges] . . ., as well as the disciplining of lawyers seeking judicial office *who during their candidacy* shall be deemed subject to the jurisdiction and discipline of the Commission. (Emphasis added.)

While it is true that these sections of the rule focus on the period of time during which the lawyer is actually a candidate, this is clearly for the purpose of defining the time during which the proscribed conduct falls under the commission's purview. Nothing therein attempts to limit the jurisdiction of the Commission thereafter to deal with such conduct. The present case dramatically illustrates the reason for this to be so. Mr. Deters' questionable advertisements were published two days and one day before the election. Could it be seriously contended that the Commission, in order to act legally, had to investigate, give notice of charges, allow time for response, hold a hearing, make findings, and impose any sanctions against Mr. Deters, all within twenty-four to forty-eight hours?

■ In further support of this argument, appellant cites *Kentucky Bar Association v. Hardesty*, Ky., 775 S.W.2d 87 (1989), in which he says:

> this Court explicitly divested the Commission of all power to sanction attorneys,

holding that the Commission's exercise of these powers over attorneys was unconstitutional under *Kentucky Constitution* Section 121. In accordance with the *Hardesty* decision, Rule 4.050 was rewritten to require the Commission to refer disciplinary matters concerning attorneys over to the Bar Association.

Appellant's reading of *Hardesty* is far too broad. Its holding was simply that the former SCR 4.020(1)(b) erroneously gave to the Commission jurisdiction to impose sanctions relating to an *individual's right to practice law;* i.e., by providing for suspension or disbarment from the practice. Only those sanctions were held to require action by the Kentucky Bar Association as being beyond the scope of the Commission under Section 121 of the Constitution, and only those sanctions are now required by the rewritten SCR 4.020(1)(d) to be referred to the KBA as to *judge or lawyer.* In the present case, the only sanction levied by the Commission against Mr. Deters was a public censure, and such is clearly within the Commission's authority.

## II.

■ Mr. Deters next argues that his advertisements did not violate Canon 7 B(1)(c), as the abortion issue or controversy is not one "likely to come before the court." He specifically points to the fact that there have been no abortion-related cases that have come before the Kenton County District Court for over a decade, that the only two hospitals in the county are Catholic and do not perform abortions, and that there are no licensed abortion clinics in the county. He concedes that a physician could possibly perform an abortion in a private office, but opines that this is unlikely in view of the lack of hospital backup. Finally, he points to "the strong Catholic heritage of the populace, and the easy availability of abortion services less than fifteen minutes away, in Cincinnati" as to rendering "virtually nil" the chances of an abortion clinic opening in Kenton County.

The Commission nevertheless found that the issue of abortion was one that will likely come before the Kenton District Court. It cites KRS 311.732, which authorizes a minor to petition a district court for an order permitting an abortion. It also refers to the possibility of misdemeanor cases which could come before the district court involving abortion protests, including trespass, disorderly conduct, or assault. Furthermore, the Commission notes that district judges are often asked to serve as special judges in other counties where numerous abortion-related issues are pending before the court.

Although not specifically mentioned in the Commission's Order, the transcript of evidence of the hearing of September 23, 1992, also reflects that two Commission members observed that the "pro-life" movement is not limited to abortions but also deals with living wills and controversies involving removing tubes or respirators, which are "big issue(s) right now, something that might come before a Judge."

We agree with the Commission's finding that Mr. Deters' political advertisements were a public announcement of his views on the abortion issue and we are further of the opinion that his claim of being "a pro-life candidate" appeared to commit him to a position not only on abortion matters, but also on other controversies, and that any or all of such issues and controversies are likely to come before the court. Moreover, there can be no doubt of Mr. Deters' motivation, as he freely testified that "any good Catholic is pro-life," that Kenton County has a high percentage of Catholic voters, and that his statement of being a "pro-life candidate" would "hopefully" give him "a distinct edge in a race," since "you're in it to win. You do what it takes."

## III and IV

■ The appellant's third and fourth issues are, in effect, both challenges to the constitutionality of Canon 7 B(1)(c), of The Code of Judicial Conduct, and consequently, they will be discussed together. It is contended, first, that Mr. Deters had a constitutionally protected right to discuss abortion in the public forum, and second, that the state has no compelling interest in so restricting his right of free speech.

Numerous cases are cited from the U.S. Supreme Court and other courts for their holdings that the election process enjoys the strongest possible protection under the First Amendment of the U.S. Constitution because it is during elections that freedom of speech is most urgently needed. It is said that if the electorate is to make informed decisions, then the information for that decision-making must be freely available. *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272, 91 S.Ct. 621, 625, 28 L.Ed.2d 35 (1971). Thus, the state must not interfere with a candidate's rights to "engage in the discussion of public issues and vigorously and tirelessly advocate for his own election ... and make his views known so that the electorate may intelligently evaluate the candidates' personal qualities and their views on vital public issues before choosing them on election day." *Buckley v. Valeo*, 424 U.S. 1, 52–53, 96 S.Ct. 612, 651, 46 L.Ed.2d 659 (1976); *Brown v. Hartlage*, 456 U.S. 45, 102 S.Ct. 1523, 71 L.Ed.2d 732 (1982).

It is emphasized by appellant that such First Amendment jurisprudence also extends these strong protections to judicial elections, citing this Court's decision in *J.C.J.D. v. R.J.C.R.*, Ky., 803 S.W.2d 953 (1991). As a matter of fact, it was the decision of the seven special justices sitting in that case which struck down Canon 7 B(1) of The Code of Judicial Conduct as it then existed, giving rise to the promulgation of the new canon which is now under attack in the instant case. The former language condemned by the decision prohibited a candidate for judicial office from announcing his views on all "disputed legal or political issues," whereas the present canon only prohibits "statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court...."

The appellant also cites the recent decision of the U.S. Court of Appeals for the Seventh Circuit in *Buckley v. Illinois Judicial Inquiry Board*, 997 F.2d 224 (1993), wherein that court considered the same language as was contained in the former canon struck down by this Court in *J.C.J.D. v. R.J.C.R., supra.* The Seventh Circuit also found the Illinois canon unconstitutionally overbroad. We do not agree with the appellant, however, in his assertion that *Buckley* holds that the provision contained in our present canon referring to "cases, controversies or issues likely to come before the court" is also unconstitutionally overbroad. Rather, we understand the decision to hold that the Federal District Judge whose decision was appealed had erroneously upheld the canon by "rewriting" it so as to make it narrower, using the "likely" test. The Court's additional comment concerning the "likely" test appears to be merely dictum.

The language of our present Canon 7 B(1)(c) has, however, been specifically upheld by a Federal Court as having been "sufficiently and closely drawn so as to avoid unnecessary abridgement of a judicial candidate's right of free speech during the campaign." *Ackerson v. Kentucky Jud. Ret. & Removal Com'n*, 776 F.Supp. 309 (W.D.Ky. 1991). The opinion recognized that, while candidates for elective judicial office are not without the protection of the First Amendment, their campaign conduct has nevertheless been regulated to a greater degree than non-judicial candidates. As stated by the U.S. Court of Appeals for the Fifth Circuit in *Morial v. Judiciary Comm'n*, 565 F.2d 295, 305 (5th Cir.1977):

Because the judicial office is different in key respects from other offices, the state may regulate its judges with the differences in mind. For example the contours of the judicial function make inappropriate the same kind of particularized pledges of conduct in office that are the very stuff of campaigns for most non-judicial offices. A candidate for the mayoralty can and often should announce his determination to effect some program, to reach a particular result on some question of city policy, or to advance the interests of a particular group. It is expected that his decisions in office may be predetermined by campaign commitment. Not so the candidate for judicial office. He cannot, consistent with the proper exercise of his judicial powers, bind himself to decide particular cases in order to achieve a given programmatic result.

The district court in *Ackerson, supra,* further found that the language with respect to

issues which are "likely to come before the court" is not impermissibly vague, stating at page 315:

The canon does not prohibit all speech by a judicial candidate on legal issues. A candidate may fully discuss, debate, and commit himself with respect to legal issues which are unlikely to come before the court. A candidate may also fully discuss and debate legal issues which are likely to come before the court. It is only with respect to the latter that the candidate is prohibited from making direct or indirect commitments.

▪ Finally, the *Ackerson* opinion holds, as do we, that there is a compelling state interest in so limiting a judicial candidate's speech, because the making of campaign commitments on issues likely to come before the court tends to undermine the fundamental fairness and impartiality of the legal system.

All of us undoubtedly accumulate some preferences, opinions, biases, and prejudices as we live through our individual life experiences. It is the task of a judge, nevertheless, to make a conscious effort to be as objective as humanly possible in answering the call to be fair and impartial. Justice can hardly be blind if the judge has made a pre-election commitment or prejudgment which causes him or her to apply the blindfold only as to one side of an issue.

The Findings of Fact, Conclusions of Law and Final Order of the Judicial Retirement and Removal Commission publicly censuring Hon. Jed K. Deters is affirmed.

STEPHENS, C.J., and LEIBSON, REYNOLDS and STUMBO, JJ., concur.

WINTERSHEIMER, J., concurs in part and dissents in part by separate opinion in which LAMBERT, J., joins.

WINTERSHEIMER, Justice, concurring in part and dissenting in part.

I concur with that part of the opinion which determines that the Judicial Retirement and Removal Commission has jurisdiction to sanction a defeated judicial candidate after the election. However, I believe that the facts of this case present a serious constitutional question which has been improperly decided.

Deters was one of seven candidates for the office of district judge of Kenton County in the November, 1991 election. He finished fifth. Two newspaper advertisements were placed stating that "Jed K. Deters is a Pro-Life Candidate." One ad was placed in the Catholic Messenger, a weekly newspaper, and the other in the Kentucky Post, a daily newspaper of general circulation in Northern Kentucky.

Zeal for the cause of judicial integrity is understandable and commendable. However, there must always be a careful balance between the need for impartiality of judges and the right of political free speech in response to an inquiry by the electorate. The right to disseminate information must be considered in regard to all the likely circumstances in a practical setting. The right of the public to know and the right to inform in regard to the question of elections are part of this complex mixture of political free speech.

Political free speech is primary as the cornerstone of a responsible representative democracy because it relates directly to the function of government in a free society. An informed electorate is the foundation of true liberty. The judiciary is no exception and is subject only to limitations which must be carefully and narrowly drawn. Recusal is a full guarantee for any appearance of impropriety. The requirement of the appearance of impartiality can easily be satisfied by recusal, voluntary or involuntary, of the judge thought to be offending. The best antidote for the misbehaving candidate is the voice of a truly informed electorate.

Practically, there is little likelihood that the issue involved in this case will occur. The advertisements in question were not a violation of the Judicial Canons of Ethics because the abortion issue is not likely to come before the Kenton District Court.

The record indicates there was no factual evidence presented by the commission on this question and that the candidate was obliged to present all the facts. The evidence as stipulated before the commission

indicated that the sitting district judges in Kenton County were willing to testify that they had never heard an abortion related issue, that none were pending and that they did not anticipate any arising in the future. There are no hospitals in Kenton County which perform abortions, and there are no licensed abortion clinics in the county.

The ethical rule in question is more narrow than the issue denounced by this Court in *J.C.J.D. v. R.J.C.R.*, Ky., 803 S.W.2d 953 (1991). There is a distinct difference between the standard of "likely" to come before the court and the criteria of "could possibly" come before the court. An abortion related issue is not likely to come before the Kenton County District Court.

A larger issue is the right of a candidate to discuss a public issue in the public forum, including a newspaper advertisement. There is a fundamental right of the people to know any candidate's views and to obtain the information that is relevant to them in making their final electoral choices. Any restriction on a candidate's right to engage in legitimate political discussion restricts the electoral process by not allowing the voters to obtain the necessary information.

Two principles are in conflict and must to the extent possible be reconciled. Candidates for public office should be free to express their views on all matters of interest to the voters. Judges, as candidates for public office, are in that category. However, judges in the performance of their duty must decide cases before them in accordance with the law rather than with any implied promises that may have been made to campaign supporters or to others. *See Buckley v. Illinois Judicial Inquiry Board*, 997 F.2d 224 (7th Cir. 1993).

The need and right of the voter to have information should be unchallenged and should be paramount in this consideration. *Cf. Monitor Patriot Co. v. Roy*, 401 U.S. 265, 91 S.Ct. 621, 28 L.Ed.2d 35 (1971). This Court, in *J.C.J.D., supra*, indicated that a broad rule prohibiting judicial candidates from speaking on disputed issues serves only to turn the judicial election into a popularity contest. The U.S. Supreme Court has repeatedly endorsed protection for the electoral process and the necessary first amendment rights related thereto. *Cf. Brown v. Hartlage*, 456 U.S. 45, 102 S.Ct. 1523, 71 L.Ed.2d 732 (1982).

There could be a variety of issues that may be important to the voters in a particular election. The response of candidates for judicial office can easily reveal their general view and philosophy as a public officeholder. In responding to such general and specific questions through a paid newspaper advertisement, a candidate should be considered as disseminating information so requested. The activity of response and information should be protected.

In regard to the right of political free speech, any state regulation must be subject to strict scrutiny and will be struck down unless it serves a compelling state interest and is narrowly drawn to serve that compelling state interest. *Brown v. Hartlage, supra*. When a regulation of free speech can result in disciplinary action against the speaker, the regulation will be subject to even greater scrutiny. *In re Primus*, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978). The canon challenged here cannot meet such a test of compelling interest and strict scrutiny.

The rationalization for Canon 7 B(1) is that it protects the integrity and impartiality of the judiciary. Impartiality of the judiciary is safeguarded by the fact that SCR 4.300 Canon 3(C) requires a judge to recuse when any personal viewpoint obstructs the ability to render a fair and impartial decision.

This Court in *J.C.J.D. v. R.J.C.R., supra*, held that a very similar rule violated the First Amendment right of free speech. There are other decisions on analogous issues which reach a similar conclusion. *See Buckley v. Illinois Judicial Inquiry Bd., supra*. *J.C.J.D.* held that freedom of speech extends to all candidates for public office, including judicial candidates, and that where state regulations extend so far as to completely outlaw speech because of subject matter, there is a strong presumption of unconstitutionality.

The principle of impartial justice under law is strong enough to entitle the government to

restrict the freedom of speech of those participating in the judicial process or election, but it is not so strong as to place that process completely above the scope of the constitutional guaranty of free speech. *Buckley.* The cardinal principle in balancing the tension between free speech and judicial propriety must remain that state laws which restrict free speech and that can result in disciplinary action against the speaker are subject to very strict scrutiny. The question must be whether the regulation has been so narrowly designed and strictly applied that a compelling state interest is served without unnecessarily burdening the exercise of free speech.

In my view that strict standard has not been met in this case.

LAMBERT, J., concurs in this opinion.