803 S.W.2d 953 (1991)
J.C.J.D., Movant,
v.
R.J.C.R., Respondent.
No. 90-SC-000130-RR.
Supreme Court of Kentucky.
February 14, 1991.
As Amended March 11, 1991.
Frank E. Haddad, Jr., George Salem, Jr., Louisville, for movant.
George F. Rabe, James D. Lawson, Executive Secretary, Retirement and Removal Com'n, Lexington, for respondent.

OPINION AND ORDER
RUTH H. BAXTER, Special Chief Justice.
Disciplinary proceedings were initiated against J.C.J.D. ("Justice Combs") by the R.J.C.R. ("Commission") on November 7, 1988, pursuant to Supreme Court Rule 4.180, for conduct during his campaign for the Kentucky Supreme Court in the primary election, and thereafter as a candidate for justice of the Supreme Court in the general election. He was elected to the Court by the voters of the Seventh Judicial District in the 1988 November General Election.
*954 Seven (7) separate violations of the Code of Judicial Conduct ("Code") were charged which can be summarized as follows:

Count I: Justice Combs violated SCR 4.020(1)(b)(i) and Canon 7(B)(1) by announcing his views on disputed legal and political issues by criticizing the "firemen's rule," laws against carrying handguns by felons, and the standard for court review of workers' compensation cases;

Count II: Justice Combs violated SCR 4.020(1)(b)(i) and Canon 7(B)(1)(b) and (c) when he allowed the Jefferson County Sheriff to send a letter on his behalf to sheriffs, police chiefs and fire chiefs in Seventh Judicial District discussing his position on the "firemen's rule";

Count III: Justice Combs violated SCR 4.020(1)(b)(i) and Canons 1, 2, and 7(B)(1) when he criticized the Code and the Supreme Court;

Count IV: Justice Combs violated SCR 4.020(1)(b)(i) and Canons 1, 2, and 7(B)(1) by challenging his opponent to a televised debate, and making statements concerning his opponent and the Supreme Court's ruling in a personal injury case;

Counts V, VI and VII: Justice Combs violated SCR 4.020(1)(b)(i) and Canon 7(B)(1) through statements that appeared in his campaign advertisements.
Counts I, II, III and IV resulted from a written complaint filed with the Commission, and Counts V, VI and VII were initiated by the Commission upon its own motion.
The Code violation charges followed a preliminary investigation by the Commission in June of 1988, and an informal discussion conference with Justice Combs on August 19, 1988. Notice of the alleged Code violations was given to him by letter dated August 23, 1988. Justice Combs denied the Commission's charges and further defended that the application of the Code to his campaign conduct was violative of his federal and state constitutional rights. Formal charges were subsequently filed on November 7, 1988. An amendment to the charges was made by the Commission, and a full hearing on all amended charges held on July 27, 1989. A Stipulation of Facts, with copies of the campaign material in question, was entered into by the parties and is filed with the record.
By order dated February 10, 1990, the Commission found Counts I, III, IV, V, VI, and VII proved by "clear and convincing evidence," and determined Justice Combs' campaign conduct violative of the Code. Count II was dismissed upon motion of counsel for the Commission on the basis that the charge could not be proved. The Commission further found that the conduct of Justice Combs was deliberate and in bad faith, and therefore constituted "misconduct in office" in violation of SCR 4.020(1)(b)(i). It ordered Justice Combs suspended from his elective office and his judicial duties without pay for a period of three (3) months.
Justice Combs appealed the Commission's Order to this Court, seeking review of the Findings of Fact, Conclusions of Law and Order of the Commission. We are required to accept the Commission's findings and conclusions unless they are clearly erroneous. Based upon the controlling case law and for the reasons cited herein, the Court hereby holds that the Findings and Order of the Commission relating to Counts I, III, IV, V, VI, and VII, are clearly erroneous, and further, are in contravention of state and federal law.[1]
The United States Constitution guarantees the right of an individual to free speech. Accordingly, Congress can make no law abridging the freedom of speech. First Amendment, U.S. Constitution. Similarly, Section Eight of the Kentucky Constitution provides that "(e)very person may freely and fully speak, write and print on any subject, being responsible for the abuse of that liberty."
Freedom of speech extends to a candidate for public office, including judicial offices. "The candidate, no less than any other person, has a First Amendment right to engage in the discussion of public issues *955 and vigorously and tirelessly to advocate his own election. . . ." Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). This right of free speech is not absolute, however. States have the authority to regulate this conduct within certain limitations if in the public interest. Valentine v. Chrestensen, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942). "(A) person does not (however) surrender his constitutional right to freedom of speech when he becomes a candidate for judicial office. A state cannot require so much." American Civil Liberties Union of Florida, Inc., et al. v. The Florida Bar, et al., 744 F.Supp. 1094 (1990).
The courts are charged with reviewing state regulations to determine if a regulation is necessary to serve a compelling state interest, and if it has been narrowly written to protect against the evil that the government can control. Brown v. Hartlage, 456 U.S. 45, 102 S.Ct. 1523, 71 L.Ed.2d 732 (1982). Where a regulation extends so far as to completely outlaw speech because of the subject matter of its content, there is a strong presumption of its unconstitutionality. Widmar v. Vincent, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981).
Moreover, restrictions affecting free speech that can result in disciplinary action to the speaker are subject to an even stricter scrutiny. In re Primus, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978). The question then becomes whether the enacted regulation has been so narrowly drafted, and strictly applied, that the compelling state interest is served without unnecessarily burdening the exercise of free speech? See, First National Bank of Boston v. Bellotti, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978).
By Section 121 of the Kentucky Constitution, the authority to regulate the conduct of the judiciary was conferred upon the Kentucky Supreme Court. The Code was adopted, effective January 1, 1978, through Supreme Court Rule, drawing upon the text of the 1972 American Bar Association ("ABA") Model Code of Judicial Conduct. The ABA Model Code was substituted for the "Canons of Judicial Ethics" which had been originally formulated some 50 years earlier to provide judges with minimum ethical standards of conduct. Although minor amendments have been made to Kentucky's Code since its adoption, there have been no substantive changes in its provisions since that time, nor has this Court previously considered the more recent Model Code of Judicial Conduct adopted by the ABA House of Delegates on August 7, 1990.
The focus of the allegations against Justice Combs centers on Canon 7(B)(1) of the Code. These sections provide in pertinent part that a candidate for judicial office:
(a) should maintain the dignity appropriate to judicial office, . . .; (and)
(c) should not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office; (or) announce his views on disputed legal or political issues.. . . SCR 4.300, Canon 7(B)(1).
The Commission found that the statements made by Justice Combs announced his views on conflicting judicial opinions which it termed "disputed issues," giving him an "unwarranted and illegal advantage in the election over his primary opponents." Commission Findings at 7. It further determined that his criticism of a Supreme Court personal injury decision, and his opponent's vote on the case, was an indirect pledge or promise of conduct in office other than the faithful and impartial performance of his duties of office. Id. at 9. Moreover, because Justice Combs had been "explicitly warned" in the Commission's informal conference after the primary election that his campaign conduct may be in violation of the Code, and he subsequently continued to speak out on such issues, the Commission found his actions were "undertaken deliberately and in bad faith, and constituted misconduct in office in violation of SCR 4.020(1)(b)(i)." Id. at 10-11.
Justice Combs argues that by becoming a judicial candidate, subject to the Code, he did not lose his right to exercise his free speech. By discussing opinions that he has authored, criticizing his opponent's position *956 on legal issues, and explaining to the public his judicial philosophy, he was, he submits, informing the electorate of his views so that an informed decision could be reached at the ballot box. Justice Combs asserts that to restrict his political speech from all "disputed legal or political issues" unconstitutionally deprives him of free speech without a compelling state interest.
There can be no question that the state has a compelling interest to protect and preserve the integrity and objectivity of the judicial system. "The state's interest in ensuring that judges be and appear to be neither antagonistic nor beholden to any interest, party or person is entitled to the greatest respect." Morial v. Judiciary Com'n., 565 F.2d 295 (5th Cir.1977), cert. denied, 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (1978). Untruthful or misleading statements, or pledges of specific judicial conduct on pending cases, cannot be tolerated. Nor can judicial candidates be allowed to make promises or predispositions of cases or issues that are likely to come before the courts that might reflect upon a judge's impartiality.
However, SCR 4.300 Canon 7(B)(1)(c) is not so narrowly drawn as to limit a candidate's speech to such specific prohibitions. Instead, the section prohibits all discussion of a judicial candidate's views on disputed legal or political issues, and thus unnecessarily violates fundamental state and federal constitutional free speech rights of judicial candidates.
It should be noted that Kentucky's Constitution provides for the selection of its judiciary by popular election.[2] Ky. Constitution, Section 117. Accordingly, we ". . . must recognize the candidates' right to make campaign speeches and the concomitant right of the public to be informed about the judicial candidates." American Civil Liberties, supra at 1097. Other than allowing a judicial candidate to state a professional history, and promise faithful and impartial performance of duties if elected, the existing Canon strictly prohibits dialogue on virtually every issue that would be of interest to the voting public. Inasmuch as the purpose of an election is to give the electorate the opportunity to become informed on a judicial candidate's qualifications for the position, which would include, among other things, knowledge of the law, and personal views and beliefs, the Canon fails in this respect. Instead, we are encouraging the public to judge candidates for our judiciary by not much more than their personal appearances. We believe a well informed electorate is essential to the democratic election process guaranteed by the Kentucky Constitution. The rights of the voting public to hear what a candidate has to say is a compelling one. We further believe candidates for judicial office can announce their views on legal and political issues without jeopardizing the integrity and independence of the legal system or undermining the impartiality of the judiciary. See, Code, Canons 1 and 2.
Moreover, we are not persuaded by the Commission's argument that the language of Canon 7(B)(1)(c) prohibiting all discussion of "disputed legal issues" by judicial candidates is necessary to prevent campaign statements which may indicate a predisposition or bias in favor of one litigant over another. To specifically prohibit this type of campaign conduct and avoid constitutional concerns, this Canon provision can be rewritten in a much narrower scope to outlaw discussion of pending or future litigation. We are mindful that the ABA did just that when it recently amended its Model Code. ABA Canon 7, as amended, now prohibits judicial candidates from ". . . mak(ing) statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court. . . ." ABA Model Code (August 1990). In its Commentary accompanying this revision, the ABA explained its change from the previous language of the Model Code:
. . . (T)he phrase `stated personal views on issues that may come before the Court' replaced `announce his view on disputed legal or political issues' because *957 the Committee (on Ethics and Professional Responsibility) believed the latter was an overly broad restriction on speech. (emphasis added)
Furthermore, as to the question of whether Justice Combs' campaign advertisements reached the level of making a pledge of preferential treatment to one class of persons over another in violation of Canon 7(B)(1)(c), we could find no evidence to support the Commission's findings. See, Commission Findings at 10-12. The campaign advertisements in question do not include the exact statements which the Commission attributed to Justice Combs, nor do we believe the advertisements as published violated this Code provision. Moreover, we did not find that the statements referred to in Counts I, IV, V, VI and VII amounted to pledges or promises of conduct in office. At no time has there been a claim that the ads contained false or misleading information which would have given the public an incorrect understanding of the issues.
Political advertisements, while undoubtedly designed to elect a candidate to office, should provide a voter with information to make an intelligent decision at the ballot box. It should be noted that the United States Supreme Court has recently considered the public's ability to review paid advertisements and utilize the information contained therein in its proper perspective. "(T)he disclosure of truthful, relevant information is more likely to make a positive contribution to decision-making than is concealment of such information." Peel v. Attorney Registration and Disciplinary Comm'n., ____ U.S. ____, 110 S.Ct. 2281, 110 L.Ed.2d 83 (1990). While Peel was rendered in the context of commercial free speech and not judicial elections, the principal that disclosure of information allows the general public to make informed decisions is equally applicable here.
Finally, we must address the Commission's determination that Justice Combs' campaign conduct failed to uphold the integrity of the judiciary, did not promote the impartiality of the judiciary, and did not maintain the dignity appropriate to judicial office. See, Code, Canons 1 and 2; 7(B)(1)(a); Commission Findings at 7-9. The basis for these Findings again centers on speech which falls within constitutional protections. We can find no evidence that violations of these Canons occurred, especially when viewed in the context of Justice Combs' right to free speech. To criticize the provisions of the Code and published court decisions does not in our view, in and of itself, undermine the public's confidence and respect for the judiciary.
Because of our ruling herein, we find it unnecessary to address the other issues raised by the parties herein in their briefs.
Accordingly, IT IS HEREBY ORDERED that the Findings of Fact, Conclusions and Order of the Commission are vacated and set aside, and all of the charges against Justice Combs should be, and are hereby, dismissed.
RUTH H. BAXTER, Special Chief Justice, and ROBERT L. BERTRAM, WILLIAM DONALD OVERBEY, PATRICK W. MATTINGLY, DAVID F. PRATT, THOMAS J. MEYER, and WILLIAM H. JONES, Jr., Special Justices, sitting.
All concur.
ROBERT L. BERTRAM, Special Justice, files a concurring opinion.
ROBERT L. BERTRAM, Special Justice, concurring.
I agree with the rationale and result reached by the majority; however, I do not think the opinion goes far enough in that the Commission materially misrepresented what the advertisements actually said. A body such as the Commission should use extreme diligence to insure that the quotes they attribute to a candidate are accurate. One of the Commission members had obviously formed an opinion at the informal conference and, having done so, should have disqualified himself from serving.
As the Judicial Canon has been determined unconstitutional, it should be rewritten by this Court.
NOTES
[1] Count II was dismissed on the Commission's own motion.
[2] Kentucky is one of 10 states that utilize a nonpartisan election for selection of its judges at all court levels. The merit selection method is utilized by the majority of the states.