Sanford L. BESHEAR, Jr., Plaintiff,

v.

Chancellor Thomas F. BUTT, Chairman; Attorney William S. Arnold, Vice Chairman; Circuit Judge Stark Ligon, Member; Municipal Judge William C. Gilliam, Member; Attorney Phillip E. Dixon, Member; Attorney James O. Cox, Member; Dewey Stiles, Member; Joy Green, Member; Annie Abrams, Member; Court of Appeals Judge George Cracraft, Alternate; Circuit Judge Harry Barnes, Alternate; Chancellor Annabelle Davis Imber, Alternate; Attorney David "Mac" Glover, Alternate; Attorney Spence Leamons, Alternate; Attorney Steve Engstrom, Alternate; Sherry Walker, Alternate; O.C. Jones, Alternate; Beverly Lambert, Alternate; James A. Badami, Executive Director, The Arkansas Judicial Discipline and Disability Commission, Defendants.

Civ. No. PB–C–91–218.

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

Sept. 19, 1991.

Sanford L. Beshear, Jr., pro se.

Winston Bryant, Atty. Gen. of the State of Ark. by Sarah H. Harberg, Atty. General's Office, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION
## AND ORDER

GEORGE HOWARD, Jr., District Judge.

The central issue to be resolved in this action is whether Canon 7(B)(1)(c) of the Arkansas Code of Judicial Conduct which provides—

### B.  CAMPAIGN CONDUCT

(1) A candidate, including an incumbent judge, for a judicial office that is filled either by public election between competing candidates or on the basis of a merit system election:

> .    .    .    .    .
>
> .    .    .    .    .

> (c) should not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office; *announce his views on disputed legal or political issues*; or misrepresent his identity, qualifications, present position....[1]  (Emphasis added)

is unconstitutional on its face and as applied to the plaintiff, Sanford L. Beshear, Jr., a municipal judge, who was a candidate for Circuit Judge, Criminal Division, 13th Judicial District of the State of Arkansas, during the May 29, 1990, Democratic Primary Election Campaign.  After careful scrutiny of the record and the applicable law, this Court is of the view that Canon 7(B)(1)(c) is unconstitutional on its face inasmuch as the provision is in contravention of the First and Fourteenth Amendments to the Federal Constitution, as discussed hereinafter.  Accordingly, a permanent injunction is issued enjoining the Arkansas Judicial Discipline & Disability Commission from enforcing Canon 7(B)(1)(c).

---

**1.**  A second issue tendered for resolution is whether the doctrines of abstention and comity should be invoked in this proceeding.

## THE RELEVANT FACTS

On May 15, 1990, Gary Ray Burbanks, an attorney who resides in the 13th Judicial District for the State of Arkansas, filed a complaint with the Arkansas Judicial Discipline & Disability Commission against Municipal Judge Sanford L. Beshear, Jr., a candidate for the judicial office, alleging that Judge Beshear, during the campaign, willfully violated Canon 7(B)(1)(c) by stating that plea bargaining is not acceptable to him and would not be allowed in his court.[2]

Defendants, members of the Judicial Discipline & Disability Commission (Commission) who are empowered to implement the Arkansas Code of Judicial Conduct, scheduled a probable cause hearing on Burbanks's complaint for May 17, 1991.

During a preliminary hearing held sometime prior to the scheduled May 17, 1991, probable cause hearing, Judge Thomas F. Butt, the Chairman of the Commission, admonished plaintiff as follows:

> JUDGE BUTT: The purpose of this proceeding this afternoon is to inquire into the matter and to receive such statements as you care to make on your side of this affair. I would say to you, sir, that the Commission is aware of that portion of your motion to dismiss which addresses the suspect constitutionality of the particular canon that is involved, and I am obliged to say to you, sir, that this Commission is not empowered to pass upon that, and therefore we will not receive any comments by you on it because it is beyond our competency to decide it. So, if you would confine your remarks to the matter of the extent, if any, to which you believe the complaint of the alleged violation of this canon is or is not well founded, and with that, we'll be glad to hear your statement.

On May 13, 1991, plaintiff, proceeding *pro se*, instituted this lawsuit seeking a declaratory judgment and injunctive relief declaring Canon 7(B)(1)(c) unconstitutional on its face and as applied to him. Judge Beshear also moved for a temporary restraining order or, in the alternative, for a preliminary injunction to enjoin defendants from holding a probable cause hearing on May 17, 1991. Judge Beshear's separate motion for injunctive relief was rendered moot on May 16, 1991, by the defendants voluntarily agreeing to postpone the probable cause hearing pending judicial resolution of the issue raised in the complaint.

On May 20, 1991, the Commission filed a motion to dismiss contending that this Court should refrain from exercising jurisdiction under the doctrines of abstention and comity inasmuch as Judge Beshear's threatened injuries are speculative; that Judge Beshear has an adequate appeal process in state court and Arkansas has a right to interpret the standard of conduct governing its own judges. Judge Beshear filed a response on June 3, 1991, and a supplemental response on June 6, 1991. On June 25, 1991, the parties filed a joint supplemental memorandum with exhibits to substantiate the factual assertions made in the motion and responses. Attached to the memorandum were copies of Judge Beshear's waiver of confidentiality, the transcript and evidence of the preliminary proceedings of case number 90–166 of the Arkansas Judicial Discipline and Disability Commission involving Judge Beshear, the November 16, 1990, admonishment issued by the Commission to Judge Francis Donovan, Circuit Judge, 20th Judicial District of Arkansas, for violating Canon 7(B)(1)(c) for his campaign activities of promising no plea bargaining.

## DISCUSSION

### A. ABSTENTION:

■ The Chairman of the Commission, during the preliminary hearing conducted prior to the probable cause hearing, stated in no uncertain terms that the Commission lacked authority to "pass upon" the First Amendment questions regarding Canon

---

**2.** Judge Beshear was not successful in his efforts to be elected Circuit Judge since he received approximately 27% of the total votes cast during the election.

7(b)(1)(c) as asserted in Judge Beshear's motion to dismiss. Moreover, the Commission precluded Judge Beshear from even making any comments whatsoever regarding his First Amendment claims by advising him, "therefore we will not receive any comments by you on it [First Amendment claims] because it is beyond our competency to decide it. So, if you would confine your remarks to the matter of the extent, if any, to which you believe the complaint of the alleged violation of this canon is or is not well founded, and with that, we'll be glad to hear your statement."

Given the circumstances existing in the administrative proceeding that frustrated and nullified Judge Beshear's efforts to assert a basic and fundamental right secured under the First and Fourteenth Amendments to the Federal Constitution and which is cherished by this nation as indispensable in furthering and implementing a democratic society, this Court is of the view that neither abstention nor comity should be invoked in this case. It is plain that plaintiff does not have an available remedy in the administrative proceeding. See: *Walker v. Wegner*, 624 F.2d 60 (8th Cir.1980). While plaintiff could appeal an adverse holding[3] of the Commission to the Arkansas court system in an effort to resolve the controversy, it is apparent that this avenue would involve delay in resolving or vindicating a basic federal right. See, 624 F.2d at 62.

Furthermore, in *City of Houston, Texas v. Hill*, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987), the Supreme Court made the following relevant observation:

Abstention is, of course, the exception and not the rule, ..., and we have been particularly reluctant to abstain in cases involving facial challenges based on the First Amendment. We have held that 'abstention ... is inappropriate for cases [where] ... statutes are justifiably attacked on their face as abridging free expression.' ...

Judge Beshear asserts vigorously that 7(B)(1)(c) is overly broad and vague and is unconstitutional facially.

Accordingly, this Court rejects the Commission's abstention argument.

B. CANON 7(B)(1)(c):

■ Canon 7(B)(1)(c), Arkansas Code of Judicial Conduct provides in relevant part:

"A candidate, including an incumbent judge, for a judicial office that is filled either by public election between competing candidates or on basis of a merit system election:

(c) should not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office; *announce his views on disputed legal or political issues*; or misrepresent his identity, qualifications, present positions, or other fact."[4] (Emphasis supplied)

The Commission asserts that "federal courts may enjoin pending state administrative proceedings that vindicate important state interests only in extraordinary circumstances", citing *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) in support of this argument. Further, the Commission argues that requiring judicial candidates to comply with Canon 7(B)(1)(c) is an important state interest in the context of "ensuring that judges be neither antagonistic nor beholden to any interest, party, or person is entitled to the greatest respect." Citing *Morial v. Judi-*

---

**3.** The record reflects that on November 16, 1990, the Commission found that Judge Francis Donovan, Circuit Judge, 20th Judicial District of Arkansas, violated Canon 7(B)(1)(c) of the Code of Judicial Conduct by circulating a campaign card during his reelection efforts that stated "I promise to stop plea bargaining if elected Circuit Judge." Judge Donovan was reprimanded. The Court also notes that Commission's decisions are made public. It is crystal clear that Judge Beshear's claims in this action are sub-

stantial and the "threatened injuries" are far from being "speculative" as asserted by the Commission.

**4.** Rule 8.2, Model Rules of Professional Conduct, provides that "[a] lawyer who is a candidate for judicial office shall comply with the applicable provisions of the code of judicial conduct."

*ciary Commission of State of Louisiana,* 565 F.2d 295 (5th Cir.1977).

Judge Beshear argues that Canon 7(B)(1)(c) limits a judicial candidate's opportunity, indeed, fundamental right, to express ideas designed not only to improve the judiciary, but to make the public aware of the problems confronting both the civil and criminal justice systems; and that the public is denied the opportunity to have access to relevant information about a judicial candidate. Recognizing that a state has a duty to regulate the conduct of the judiciary, Judge Beshear asserts, however, that the applicable regulation must be consistent with the overall objectives of the First and Fourteenth Amendments to the Federal Constitution. In essence, plaintiff contends that Canon 7(B)(1)(c) is unconstitutional on its face and as applied to him.

There is really no dispute as to the facts in this proceeding. The dispute focuses on the constitutionality of Canon 7(B)(1)(c), under the First Amendment to the Federal Constitution and made applicable to states under the Fourteenth Amendment, as interpreted and applied to Judge Beshear during the May, 1990 election campaign when Judge Beshear stated that plea bargaining is not acceptable to him and not allowed in his court.

This Court is persuaded that 7(B)(1)(c) in precluding a judicial candidate from expressing "his views on disputed legal or political issues" is substantially overbroad and vague. It is plain that the canon precludes a substantial amount of constitutionally protected conduct by inhibiting free expressions as well as imposing a chilling effect on a judicial candidate's efforts and desire to express his views to the public relative to problems confronting the judiciary and how the candidate proposes to deal with them. Canon 7(B)(1)(c), indeed, minimizes the importance of free speech and openness in that branch of the government that serves as guardian of the civil liberties of the people. In a nation, such as ours, as Abraham Lincoln so ably stressed, where the government is one of the people by the people and for the people, political candidates, even those in judicial contests, not only cherish the thought, but expect to be afforded the opportunity, if not indeed the right, to express their views on disputed and political issues affecting the interest and welfare of the people who ultimately decide by the ballot whether a candidate is elected to the position sought. The Canon imposes a direct and substantial limitation on expressions that are secured under the First Amendment. In other words, Canon 7(B)(1)(c) is too inclusive. Indeed, a judicial candidate striving diligently to conduct a campaign that is consistent with the canon, without the benefit of any specific standards as a guide, would in all likelihood refrain from expressing his views, while permissible under the First Amendment, in order to avoid the risk of a probable cause hearing likely to result in a public reprimand.

The Commission has failed to demonstrate or articulate any substantial interest on behalf of the State of Arkansas justifying the restrictions imposed under Canon 7(B)(1)(c). The Commission's assertion that the canon is designed to ensure high professional standards is not persuasive. Plaintiff has shown that his utterances were made in good faith and not designed to mislead the public or pose a clear and present danger to the community.

The Commission's reliance on the case of *Morial v. Judiciary Commission of State of Louisiana, supra,* in support of its argument that the State of Arkansas has an important state interest in requiring judicial candidates to comply with the canon on the theory that enforcement will ensure that judges "be neither antagonist nor beholden to any person" is misplaced. In *Morial,* the Court found that Canon 7(A)(3) of the State of Louisiana Code of Judicial Ethics, which requires state judges who are interested in running for a nonjudicial elective office to resign, did not offend the First Amendment guarantee of free expressions and association for the following reasons:

"A requirement that a state judge resign his office prior to becoming a candi-

date for nonjudicial office bears a reasonably necessary relation to the achievement of the state's interest in preventing the actuality or appearance of judicial impropriety."

The Court in *Morial* further emphasized that there were three "specific evils targeted" by the Louisiana canon, namely, (1) the state's desire to prevent abuse of judicial office by a judge-candidate during the campaign, (2) to preclude the abuse of the judicial office by a judge who was defeated in the electoral bid and returned to his judicial office and (3) the desire of eliminating any appearance of impropriety by judges during and after the campaign for the nonjudicial office. It is plain that the area that the State of Louisiana sought to regulate by implementing Canon 7(A)(3) is limited with "narrow specificity." [5] See: *N.A.A.C.P. v. Button*, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405; *Cantwell v. Connecticut*, 310 U.S. 296, 311, 60 S.Ct. 900, 906, 84 L.Ed. 1213. In the instant case, Canon 7(B)(1)(c) is overbroad and vague and as such, has the force and effect of inhibiting unduly protected freedoms of expression. Judge Beshear in no way was advocating any unlawful activities or seeking to breach the peace in any way. Judge Beshear was endeavoring to voice ideas and policies that he would institute, if elected, to cope with the increasing crime rate. Obviously the policies would be implemented in open court and in the presence of all interested parties and not in secrecy or in an arbitrary or oppressive manner. Indeed, neither the Commission nor the State of Arkansas may, under the pretext of prohibiting professional misconduct, ignore basic and fundamental federal rights. See: *Schware v. Board of Bar Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796.

In *Bates v. Little Rock*, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480, the Supreme Court emphasized:

"Where there is a significant encroachment upon personal liberty, the state may prevail only upon showing subordinating interest which is compelling."

The Commission has failed to advance any substantial regulatory interest in the form of coping with some imminent dangers or wrong growing out of Judge Beshear's expressions which can justify the broad prohibition contained in Canon 7(B)(1)(c).

Accordingly, declaratory judgment will be entered in favor of plaintiff and against defendants finding that Canon 7(B)(1)(c) of the Arkansas Code of Judicial Conduct violates the First Amendment to the United States Constitution and permanently enjoining defendants from enforcing Canon 7(B)(1)(c).[6]

IT IS SO ORDERED.

---

**5.** Canon 7(A)(3) of the Louisiana Code of Judicial Ethics provides:

A judge should resign his office when he becomes a candidate either in a party primary or in a general election for a nonjudicial office, except that he may continue to hold his judicial office while being a candidate for election to or serving as a delegate in a state constitutional convention, if he is otherwise permitted by law to do so.

The Court in *Morial* found that the Louisiana Canon was identical to that recommended by the American Bar Association. See: ABA Code of Judicial Ethics, Canon No. 7(A)(3) (1973).

**6.** Since August of 1990, three courts, *Stretton v. Disciplinary Bd. of the Supreme Court of Pa.*, 763 F.Supp. 128 (E.D.Pa.1991), *ACLU v. The Florida Bar*, 744 F.Supp. 1094 (N.D.Fla.1990), and *J.C.J.D. v. R.J.C.R.*, 803 S.W.2d 953 (Ky.1991), have addressed the constitutionality of Canon 7(B)(1)(c) and found it to be violative of the First Amendment.