**In re Beth Lewis MAZE.**

**No. 2001–SC–0956–OA.**

Supreme Court of Kentucky.

Sept. 26, 2002.

Beth Lewis Maze, Mt. Sterling, Counsel for Appellant.

B.M. Westberry, Jean Collier, Ethics Committee of the Kentucky Judiciary, Frankfort, Uhel Barrickman, Richardson, Gardner & Barrickman, Glasgow, Counsel for Appellee.

GRAVES, Justice.

■ This controversy originated when Beth Lewis Maze, a Circuit Judge for the Twenty–First Judicial Circuit, was invited to participate in a program sponsored by the American Council of Young Political Leaders (ACYPL). The program was an educational mission to the Philippines, consisting of a two-week exchange to facilitate understanding and discussion between emerging leaders in the United States and in the Philippines. Judge Maze proactively sought an Ethics Committee opinion in October 2001 as to whether her participation in the program would violate the Canons of Judicial Ethics.

The Ethics Committee issued an informal opinion that Judge Maze's participation in the program would violate Canon 5 of the Code of Judicial Conduct, SCR 4.300. Pursuant to an order from this Court, the Ethics Committee reviewed its informal opinion and issued a formal opinion also finding that Judge Maze's participation in the program would violate the Canons of Judicial Ethics on the grounds that: (1) the invitation/appointment was political because Judge Maze was chosen not because she was a judge, but because she was a Democrat; (2) although the purpose of the trip was educational, the educational activities were not limited to the improvement of the law, the legal system, and the administration of justice; (3) the nature of the activities created the appearance of partisan political activity contrary to the Canons; and (4) foregoing opportunities such as this one is merely one of the burdens of judicial office, which carries with it comparable benefits.

We recognize that every benefit carries a corresponding burden. There are at least four burdens and benefits to consider here, and our contrary interpretation of the Canons of Judicial Ethics does not dispute that judges submit themselves to certain burdens upon cloaking themselves with the benefits of judicial office.

■ The first factor, and the factor of the greatest significance, is the judicial system's interest in appearing fair, impartial, and independent from other branches of government. The second factor is the benefit to the individual in engaging in the activity or attending the program in controversy. The third factor is the burden to the individual in foregoing the activity. Finally, the fourth factor is the burden to the judicial system in prohibiting its judges and judicial employees from engaging in the activity. Balancing these factors requires a case by case determination, a process in which the Canons of Judicial Ethics act as guideposts, not walls impervious to our better judgment and prudence. Because this Court finds the balance of the four factors weighs heavily in favor of allowing judges to participate in civic activities of this nature, we reverse.

The Ethics Committee argues that by prohibiting activities such as the one in question, the judiciary maintains its independence and avoids the appearance of impropriety. Under these facts, both benefits are minimal.

We certainly agree with the Committee that the judiciary needs to be independent to be impartial. *See J.C.J.D. v. R.J.C.R.*, Ky., 803 S.W.2d 953, 956 (1991) (holding that "an even-handed unbiased and impartial judiciary is one of the pillars upon which our system of government rests"). However, we do not perceive that this program poses any threat to judicial independence because it is a predominantly

educational, growth-oriented experience. As stated by Judge John J. Porfilio of the United States Court of Appeals for the Tenth Circuit:

> The greatest source of judicial independence lies within the willingness of the judges to subject personal ideals to the Constitution. This is the keystone of judicial independence. Judicial independence comes from within the judges and sublimes all other sources. Judges do not react to negative stimulus, they act because of positive stimulus.

"A Discussion of Judicial Independence with Judges of the United States Court of Appeals for the Tenth Circuit", 74 Denv. U.L.Rev. 355, 366 (1997).

The program also does not threaten the independence of the judiciary because it is neither political nor partisan. The problem is most glaring in connection with the Committee's claim that this activity would violate section 4 of Canon 5 which states that a judge "shall not engage in any political activity except on behalf of measures to improve the law, the legal system, or the administration of justice. . . ." To support its claim that this activity is political, the Ethics Committee has alleged that Judge Maze was chosen to participate because she was a Democrat. This strains credulity and belittles the decision-making process of the ACYPL, a bi-partisan, if not non-partisan, organization. Judge Maze's nomination letter states that she was nominated first and then selected "by the ACYPL Board of Trustees from a competitive pool of close to 300 nominees." To say that Judge Maze was chosen for her party affiliation or to even declare that it played a significant factor is an impermissible assumption. At the very least, it is a weak foundation to prohibit a judge from pursuing a civic activity such as this one that is first and foremost educational.

The ACYPL agenda demonstrates the educational element of the exchange. It does not aim to garner support for any special interest, nor raise money for any group. It aims to enrich the life of the individual participants. Moreover, the fact that the composition of the delegation includes both Democrats and Republicans does not, in and of itself, make the program partisanly political. In fact, the composition of the seven-person delegation of three Republicans, three Democrats and one ACYPL escort is indicative that the ACYPL is non-partisan rather than political. It is important to note that in response to Maze's concern, the ACYPL agreed to not disclose the political affiliation of the participants. The balance of Democrats and Republicans ensures that a diversity of viewpoints exists, rather than ferments a political bias that might impinge upon Judge Maze's independent determination of issues.[1]

All governmental activity is not necessarily political. While the seven members of the ACYPL have some affiliation with the United States government, that alone does not make this program partisanly political. Thus, while the program may even be governmental, this too offers little evidence that it is political.[2]

---

1. While we refrain from creating a hard line rule as to what makes one activity political while the other is educational, we hold that the purpose and the agenda are the two most significant factors in this determination. In this case, both the purpose and agenda demonstrate an experience designed to instruct, not indoctrinate, imbue with political power, or change the political system.

2. We reach this determination after a careful consideration and analysis of the ACYPL and this program. Some organizations are inherently political and cannot avoid being so by invoking claims of an educational activity.

Furthermore, we believe that the fact that the program's locale is in another country minimizes, if not negates, any appearance of impropriety. The Commentary to Canon 2 states that the test for the appearance of impropriety is, "whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired." While prejudice may follow one across state and international borders as easily as one's luggage, the idea that the appearance of impropriety will spring forth from this international exchange assumes too much. The citizens of the Commonwealth of Kentucky cannot reasonably fear that a judge will become biased by virtue of exposure to a foreign culture. It may be different if Judge Maze were attending a two-week educational conference about a special interest that frequently appears before her court, but the "interest" in question is a foreign culture. Thus, while we agree with the proposition that the judicial system has a substantial interest in being independent and appearing fair and impartial, we conclude that activities such as this one pose very little threat to these ideals.

On the other hand, the principal benefit to judges being able to participate in programs such as this one is to learn about other cultures. The Ethics Committee seizes upon this aspect of the program to declare that it is contrary to the spirit of the Canons. Presumably, this references the fact that "judges shall not engage in political activity except on behalf of measures to improve the law, the legal system or the administration of justice. . . ." Yet, as we have seen, this wrongly presupposes that the activity is partisanly political.

■ Absent a political nature, the issue is what value such a learning experience would be to judges. In his book *Judicial Conduct and Ethics,* Jeffrey M. Shaman comments that "It is a time-honored tradition that judges should engage in lecturing and scholarship concerning both legal and non-legal subjects . . . many justices, including William O. Douglas and John Marshall, were the authors of books on non-legal popular subjects." *Id.* at § 9.02, p. 289 (Lexis 2000).

Judges pursue the truth, and few pursuits are more valuable than education and enlightenment. The value of this experience is not only demonstrated by the efforts Judge Maze has made to attend such a gathering but also through the nature of education itself. A person's mind is not divisible. Education in one area adds to and enriches a person's mind as applied to all areas. Thus, even learning about the culture of the Philippines would add to a body of knowledge that would make Judge Maze a stronger judge as the United States becomes more culturally diverse.

The burden to Judge Maze in foregoing this opportunity is substantial. The result is that her role as a judge would preclude her from pursuing a very valuable educational experience. Moreover, Judge Maze's invitation points out that receiving such an invitation is a privilege and even specifies that it may be a one-time opportunity. With over 300 nominees for six positions, the probabilities are not with her.

While it is understood that one must accept some burdens in order to enjoy the other benefits of being a judge, foregoing civic opportunities such as this one tends toward the creation of an isolated judiciary out of touch with society. The judiciary must be an independent branch of government, but it is that branch of government that affects people most directly.

The restraint the Ethics Committee seeks to place on a judge's freedom as an

individual damages the judiciary. The loss of the freedom to participate in such enriching educational experiences would discourage many of those most dedicated to the pursuit of learning from pursuing the bench. In this way, the fear of creating the appearance of impropriety could dissuade many from seeking judicial office.

After weighing the factors and considering all of the arguments, we find the Ethics Committee's opinion erroneous and contrary to the spirit of the Canons of Judicial Ethics. For the reasons stated above, the opinion of the Ethics Committee is hereby vacated.

LAMBERT, C.J., GRAVES, KELLER, STUMBO, and WINTERSHEIMER, J.J. concur.

COOPER, and JOHNSTONE, J.J. would dissent based on the grounds stated in the Ethics Committee's opinion.