RENDERED:  OCTOBER 14, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0337-MR

ELMIS HAMBURGER                                                APPELLANT

v.
APPEAL FROM DAVIESS CIRCUIT COURT
HONORABLE JOHN M. MCCARTY, SPECIAL JUDGE
ACTION NO. 19-CI-00598

MICHAEL S. PLEMMONS                                            APPELLEE

OPINION AND ORDER
STRIKING BRIEFS AND DISMISSING APPEAL

** ** ** ** **

BEFORE:  ACREE, DIXON, AND K. THOMPSON, JUDGES.

ACREE, JUDGE:  Appellant, Elmis Hamburger, appeals the Daviess Family

Court's February 23, 2021 post-decree order.  After reviewing the briefs, we strike

both parties' briefs and dismiss this appeal pursuant to CR[1] 76.12(8)(a).

The parties divorced in early 2020.  The Daviess Family Court issued

the final Findings of Fact, Conclusions of Law, and Decree of Dissolution and

---

[1] Kentucky Rules of Civil Procedure.

Contempt order on March 26, 2020. Both parties filed motions to alter, amend, or vacate the divorce decree, and after considering these motions, the court issued the final divorce decree on July 2, 2020. Both parties agree this order was final and appealable. Neither party filed a timely notice of appeal or a motion to alter, amend, or vacate the amended decree pursuant to CR 59.05.

Appellate counsel dispute what happened after entry of the decree and take aim at each other in their respective briefs. Their discord is obvious, but neither brief illuminates the issue or issues. Even a less-than-coherent explanation of the basis for seeking reversal or affirmance can be illuminated if the briefs cite the record and pertinent legal authority. However, neither brief complies with our procedural rules requiring advocates to do that. For this Court to understand the arguments, we would have to do the parties' work of research and advocacy.

Specifically, Appellant's brief includes no citations to the certified record – none at all – violating CR 76.12(4)(c)(iv) and (4)(c)(v), and Appellee's brief similarly includes no citation to the certified record – none at all – violating CR 76.12(4)(d)(iv). "Supporting factual assertions with pinpoint citations may, in fact, be the most substantial requirement of CR 76.12." *Commonwealth v. Roth*, 567 S.W.3d 591, 595 (Ky. 2019) (citation omitted). "Without pinpoint citations to the record, a court 'must sift through a record to [find] the basis for a claim for relief.'" *Id.* (citation omitted).

-2-

The briefs also hardly comply with the requirement of ample citation to authority. Both briefs combined cite a total of only five procedural rules that seem to have little bearing on what this Court struggles to perceive might be the substance of the dispute.[2] CR 76.12(4)(c)(v), (4)(d)(iv). Neither brief cites statute or case law.

Each brief has an "appendix" attached but neither complies with the rule for appendices found at CR 76.12(4)(c)(vii) for appellants and CR 76.12(4)(d)(v) for appellees. That is to say neither appendix includes an "index . . . set[ting] forth where the documents may be found in the record." CR 76.12(4)(c)(vii), (4)(d)(v). Appellant's index does not even conform to the sequence of documents in the appendix.

Furthermore, CR 76.12(4)(c)(vii) requires that "[t]he appellant shall place the judgment, opinion, or order under review immediately after the appendix list so that it is most readily available to the court." According to the seventh page of Appellant's brief (the pages are not numbered), Appellant seeks relief from the "Order of the Daviess Circuit Court entered on February 23, 2021[,]" but that order is not included in the appendix at all. Not any of the pages making up the parties'

---

[2] Our best approximation of what Appellant desires from this Court is an interpretation of the July 2, 2020 decree that became final when neither party filed a timely notice of appeal. We glean this partly from the Appellant's appendix which includes counsel's file copy of that decree. The only other circuit court ruling in Appellant's appendix is a November 20, 2020 order. Neither party filed a notice of appeal from that order either.

respective appendices are marked with page numbers that the circuit court clerk places there in the certification process.

Significantly, CR 76.12(4)(c)(v) requires that the appellant's brief "shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." Appellant violates this rule. "If a party fails to inform the appellate court of where in the record his issue is preserved, the appellate court can treat that issue as unpreserved." *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021).

Other less substantial failings of Appellant's brief include violations of CR 76.12(4)(a)(ii) (margins), CR 76.12(4)(c)(i) (introduction not to exceed "two simple sentences"), CR 76.12(4)(c)(iii) (page number references), and CR 76.12(4)(c)(vii) (extruding tabs in appendix). To the list of Appellee's shortcomings, we can add violations of CR 76.12(4)(a)(iii) (requiring blue cover on both front and back), CR 76.12(4)(d) (proper sequencing of the sections of the appellee's brief), and CR 76.12(4)(d)(v) (extruding tabs in appendix).

Pursuant to CR 76.12(8), appellate courts may impose sanctions when a party files a brief failing to conform to the rules of appellate procedure. CR 76.12(8); *Ford*, 628 S.W.3d at 155. Subsection (8)(a) of CR 76.12 states: "A brief may be stricken for failure to comply with any substantial requirement of this Rule 76.12."

Furthermore, failing to comply with the appellate rules "is ground for such action as the appellate court deems appropriate, which may include: (a) A dismissal of the appeal . . . , (b) Striking of . . . briefs, . . . (c) Imposition of fines on counsel for failing to comply with these rules of not more than $500, and (d) Such further remedies as are specified in any applicable Rule." CR 73.02(2).

We expect a greater degree of competency from appellate advocates than has been shown in this case. As we have said too often, rules of appellate procedure exist for a reason. They are not mere decorations but "lights and buoys to mark the channels of safe passage and assure an expeditious voyage to the right destination. Their importance simply cannot be disdained or denigrated." *Martin v. Wallace*, ___ S.W.3d ___, 2022 WL 3641154, at *2 (Ky. Aug. 18, 2022) (quoting *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010) (quoting *Louisville & Jefferson Cnty. Metro. Sewer Dist. v. Bischoff*, 248 S.W.3d 533, 536 (Ky. 2007) (quoting *Brown v. Commonwealth*, 551 S.W.2d 557, 559 (Ky. 1977)))).

We decline on this occasion to fine counsel. However, we do exercise our authority to strike both briefs for substantial noncompliance with our rules of appellate advocacy and to dismiss the appeal without addressing its merits, if any.

With all due respect, the dissent's failure to share the majority's perception of the quality of briefing in this case is misguided and misleading. To begin, the selective quoting of *French v. French* leaves out its essence. 581

S.W.3d 45 (Ky. App. 2019).  Representing that part of *French* only as an ellipsis,

the dissent ignores its critique of reflexive application of the doctrine of substantial

compliance the dissent urges.  The portion of *French* excised by the dissent says:

> Other potential for harm caused by the routine application of substantial compliance is rarely addressed in our opinions.
>
> For example, we have never considered any possible harm to the image of bench and bar caused by making "close enough" the standard when it comes to rules for lawyers. We seem to treat a professional advocate's actual failure to follow appellate rules as no more harmful than his Constitutionally-protected right to "criticize [such rules] and published court decisions [which we conclude] does not . . . undermine the public's confidence and respect for the judiciary." *J.C.J.D. v. R.J.C.R.*, 803 S.W.2d 953, 957 (Ky. 1991).
>
> Nor have we expressed concern about potential harm to the quality of appellate advocacy.  We trust that substantial compliance will not invite mediocrity as acceptable practice in our appellate courts.  We hope that trust is not misplaced.
>
> And, our opinions do not express concern that accepting substantial compliance will erode the bar's respect for process and procedure.  After all, why should we presume lawyers will be less likely to obey our rules as written, simply because the courts have become less likely to enforce them as written?
>
> We are optimistic that by *accepting* substantial compliance we are not *discouraging* strict, or at least stricter, compliance with our rules.  However, some suspect that we are.  At least in the case before us, our embrace of substantial compliance appears to have

> discouraged counsel from reading, or at least following, the basic requirements of CR 76.12.

581 S.W.3d at 49. The same can be said of this appeal.

Furthermore, *French* predates the Supreme Court's opinion in *Ford v. Commonwealth*, which reaffirms the appropriateness of the very sanctions imposed here, and more.[3] 628 S.W.3d at 153-54. And in *Commonwealth v. Roth*, the Supreme Court struck the appellant's brief and dismissed that appeal for lesser violations than those justifying striking this appellant's brief and dismissing. 567 S.W.3d at 596 ("Because the Commonwealth failed to comply with CR 76.12(4)(c)(iv) and (v), we exercise our discretion under CR 76.12(8)(a) and order the Commonwealth's brief stricken and this appeal dismissed."). Are *Ford* and *Roth* not sending a message we should heed? Are these not messages appellate advocates should heed?

Substantial compliance is not a brief-writing standard; it is a judicial doctrine that allows a reviewing court to ignore its own rules when a party violates them, provided a good faith effort to comply can be shown. In this case, "there is nothing to indicate a good faith effort . . . to comply with the requirements of CR

---

[3] *Ford v. Commonwealth* quoted this Court's opinion that "Appellant's noncompliance with CR 76.12(4)(a)(ii) appears to be intentional[,]" 628 S.W.3d at 153, and concluded that "[a]n appellate court, when faced with a situation such as this, can issue a show cause order for the offending attorney and, after a hearing, impose contempt sanctions on the attorney if warranted. A court can also report unethical conduct to the Kentucky Bar Association and, in fact, may be required to in certain circumstances pursuant to Kentucky Supreme Court Rule 3.130(8.3)." *Id.* at 156.

76.12(4)(c)(iv) and (v)[,]" *Roth*, 567 S.W.3d at 596, nor can the inference reasonably be drawn that counsel seriously reviewed CR 76.12 before briefing.

There are limits. We cannot apply the doctrine of substantial compliance to excuse substantial noncompliance any more than we can apply it to forgive the filing of a notice of appeal out of time. Courts do not possess the power of royal prerogative, a concept we reject because it is not "in accord with the spirit of a republican form of government. There is no royal prerogative . . . ." *Cochran v. Beckham*, 28 Ky. L. Rptr. 370, 89 S.W. 262, 263 (1905). The people themselves and alone are our sovereign and they have not delegated to this or any branch of government such power that would authorize us to favor some by waiving compliance with rules our Supreme Court was empowered and obligated to make and enforce, while sanctioning the noncompliance of others.

The dissent desires lesser sanctions. Lesser sanctions would be justified for lesser violations, but the advocates have left hardly any briefing rules unbroken. Lesser sanctions are not justified here.

The dissent also urges resolution on the merits. But what merits? The purpose of briefing is to inform the reviewing court why the circuit court's decision should be reversed or not. But even the dissent recognizes the briefing is so deficient that training and a second opportunity are necessary to cure it. It

would be reckless for this Court to venture a guess as to the issue on appeal based on what little the parties elected to present.

For the reasons set forth above, it is the opinion of the Court that the briefs of Appellant and Appellee be and hereby are STRICKEN, and the appeal is DISMISSED.

DIXON, JUDGE, CONCURS.

THOMPSON, K., JUDGE, DISSENTS AND FILES SEPARATE OPINION.

ENTERED: _October 14, 2022_____     _____
JUDGE, COURT OF APPEALS

THOMPSON, K., JUDGE, DISSENTING:  Respectfully, I must strongly dissent from the majority's Opinion and Order striking the briefs and dismissing the appeal.  I simply have a fundamental disagreement with the majority Opinion as to what should be done under these circumstances and our responsibility to the parties.

Although I agree with the majority Opinion that the briefs are problematic and failed to appropriately conform to the Kentucky Rules of Civil Procedure (CR) 76.12(4)(c)-(d), I believe it would be more appropriate to resort to other more limited sanctions first, to see if the problems can be rectified and the

-9-

practitioners' appellate practice improved, rather than immediately striking the briefs and dismissing the appeal. While such sanctions are permissible pursuant to CR 76.12(8)(a) and CR 73.02(2), I believe that dismissing an appeal should always be a remedy of last resort.

I am supported in my view by Judge Acree's own opinion in *French v. French*, 581 S.W.3d 45 (Ky. App. 2019). In *French*, Judge Acree noted a series of deficiencies in the appellant's brief in which the appellant (Father) violated CR 76.12(4)(c)(ii), (iii), (v), (vii) and (6). *French*, 581 S.W.3d at 47-48. Judge Acree analyzed what should be done in response to such failures as follows:

> What is the consequence for violating these appellate rules? Fortunately for Father and others who find the rules challenging, inconvenient, or annoying, **compliance with procedural rules in the appellate courts, like horseshoes and hand grenades, need not be precise to be effective, at least in obtaining some kind of review. Substantial compliance is firmly entrenched in our procedural jurisprudence**. *Ky. Farm Bur. Mut. Ins. Co. v. Conley*, 456 S.W.3d 814, 818 (Ky. 2015). And, some members of the bar have shown no reluctance to embrace this judicial leniency when presenting appeals to this Court, confident that dismissal is highly unlikely. *Id.* ("appropriate sanction for the violation of a rule is *not* automatic dismissal").

> Still, says the Supreme Court, "where a[n advocate's] procedural misstep is appreciably serious, dismissal may be the appropriate remedy." *Id.* (citing CR 73.02(2)(a) ("Failure to comply with other rules relating to appeals . . . is ground for . . . dismissal of the appeal. . . .")). Not to worry, however. **If an appellant names and timely notices the proper parties, sufficient**

**harm to dismiss an appeal is virtually never to be found**. This is because **whether that procedural misstep is "appreciably serious" *enough* depends on "*the harm caused* and the severity of the defect**, as determined on a case-by-case basis." *Id.* (citation omitted) (emphasis added)). **The key phrase here is "the harm caused."**

**"The harm caused" refers to any harm or prejudice caused "to the parties**." *See id.* (citing *Flick v. Estate of Wittich*, 396 S.W.3d 816 (Ky. 2013) (clerical error in naming parties to an appeal did not prejudice the parties); *Crossley v. Anheuser-Busch, Inc.*, 747 S.W.2d 600 (Ky. 1988) (a tardy prehearing statement properly served did not result in harm to the parties)). Other potential for harm caused by the routine application of substantial compliance is rarely addressed in our opinions.

. . .

. . . [The] **failure to follow our rules justifies an appropriate sanction, less than dismissal**.

In addition to the authorized sanction of dismissal under CR 73.02(2)(a), we may strike the brief pursuant to CR 76.12(8)(a). In fact, the scope of sanction is broader still. "Failure to comply with . . . rules relating to appeals . . . is ground for such action as the appellate court deems appropriate. . . ." CR 73.02(2). **One acceptable sanction is "to review the issues raised in the brief for manifest injustice only**, *Elwell v. Stone*, 799 S.W.2d 46, 47 (Ky. App. 1990)." *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010). We do so in this case.

*Id.* at 48-49 (bold and underlined emphasis added).

I understand Judge Acree's position that the deficiencies here simply

go too far to apply the reasoning in *French* to try to salvage anything of the appeal

and I understand the potential evils he references in the rest of this Opinion.  While I share Judge Acree's frustration with the parties' failure to follow the appropriate procedural rules for their briefs, I ask, why is dismissal appropriate here when there appears to be no harm caused to the parties by the failures contained in their briefs?  For example, while the February 23, 2021, order from which the appeal is taken is not found in the appendix of Appellant's brief, opposing counsel apparently did not find that problematic, attaching a copy of that order to Appellee's brief.

I do not dispute that we have the power to dismiss this appeal; I argue that it is not the most appropriate action to take at this juncture.  The underlying facts in *Ford v. Commonwealth*, 628 S.W.3d 147 (Ky. 2021), illustrate this point.  When that case was before our Court, the attorney sought permission to increase the length of her appellate brief from twenty-five pages to forty pages and our Court granted that motion.  The attorney then proceeded to seek permission to increase the length of her brief further and tendered a brief in excess of the forty-page limit; that motion was denied, her tendered brief was returned as noncompliant, and the attorney was given thirty days in which to file a compliant brief.  *Id.* at 152.  The attorney then filed a brief which was facially forty pages long, but only met this page requirement by shrinking the font and narrowing the

margins of the brief. At that juncture, our Court determined to only review the appeal for manifest injustice. *Id.* at 152-53.

In *Ford*, there can be no doubt that the attorney understood what the rules as to length were as she sought and received an extension of length before proceeding to tender a brief in excess of those limits. However, even under those facts, she was given an opportunity to file a compliant brief. That is what I am asking that the parties be allowed to do here.

In *Ford*, the attorney then intentionally disobeyed our Court's order by playing games with her brief's font and formatting rather than editing her brief down as required. There can be no doubt that this attorney deliberately violated our rules. But even under those circumstances, the appeal was not dismissed; instead, our Court reviewed the case, albeit for manifest injustice.

Our Supreme Court extensively discussed allowable consequences for intentionally flouting the rules for briefs, rejected that manifest injustice could properly be applied where there was no error in failing to identify where the error was preserved, but offered other alternatives that would have been proper. *Id.* at 153-56. The Kentucky Supreme Court indicated that other options included striking the briefs and dismissing the appeal, but did not mandate that this be done, instead clarifying:

> In no way should this Opinion be read to condone such
> conduct or to suggest appellate courts have no redress for

this type of conduct. An appellate court, when faced with a situation such as this, can issue a show cause order for the offending attorney and, after a hearing, impose contempt sanctions on the attorney if warranted. A court can also report unethical conduct to the Kentucky Bar Association and, in fact, may be required to in certain circumstances pursuant to Kentucky Supreme Court Rule 3.130(8.3).

*Id.* at 156. I have suggested a remedy in accordance with these options.

Although I believe it to be fool-hardy for parties to attempt to file appellate briefs without reviewing the necessary requirements, the parties' many errors, although improper, are not necessarily intentional. Normally briefs that are this deficient would be caught and rejected earlier on in the appellate process before being assigned to a merits panel, with the standard practice being for parties to be given an opportunity to file a conforming brief. Therefore, it is appropriate for us to allow them the opportunity to submit conforming briefs.

I would first strike the briefs and order the parties to file corrected briefs in compliance with CR 76.12(4)(c)-(d). I would direct the parties to review the resources we have on our Court of Appeals website which would aid them in complying with these requirements and hopefully improve their appellate practice both regarding this case and in their future practice. They should consult https://kycourts.gov/Courts/Court-of-Appeals/Pages/default.aspx which has a list of pertinent resources under the apropos heading "Resources." Included are

"West's Rules & Procedures," "Appellant Checklist," "Appellee Checklist," and "Basic Appellate Handbook."

Next, I propose we assess a one-hundred-dollar fine upon each counsel and allow them a hearing to argue why that fine should not be imposed. This would help counsel to understand the seriousness of failing to comply with CR 76.12(4)(c)-(d). Regardless of our decision after such a hearing, if counsel continue to disobey our rules in filing their new briefs, we could then consider higher fines or ultimately dismissal, but such a sanction is premature. Yes, engaging in such processes will result in more work for our panel and our Court, but I believe that in the end the attorneys will benefit from this process and, more importantly, their clients' interests will be protected.

The dismissal of a timely filed appeal is a grave injustice which disproportionally affects Appellant even though, as the majority Opinion pointed out, both Appellant and Appellee briefs were deficient. It effectively takes away the constitutional right to at least one appeal. *See* KY. CONST. § 115. It finalizes an order that may or may not be valid in the first place.

However, formatting and content deficiencies aside, I believe the majority Opinion may have determined to dismiss because ruling on the raised

issues is problematic due to subpar substantive content in the briefs.[4]  Given these deficiencies, even though I prefer the process I have outlined above, I believe it would be better to rule based on the merits even if our ruling could not fully address the issues the parties had in mind (but failed to adequately communicate in their briefs) than to summarily dismiss the appeal.  A decision on the merits will allow both parties to understand why the appeal was won or lost and assure them that they received due process and a rational review.

We also have the option to review for manifest injustice because Appellant violated CR 76.12(4)(c)(v) and failed to inform us as to where in the record the issue was preserved, and we can thus treat it as unpreserved.  *Ford*, 628 S.W.3d at 155-56.  Even this limited review is preferable to me than simply dismissing the case outright.

Essentially, as Alfred Lord Tennyson wrote in his poem *In Memoriam A. H. H.* in Canto XXVII, "'Tis better to have loved and lost / Than never to have

---

[4] While Appellant states that Appellee was trying to get the family court to fundamentally change the provisions in the July 2, 2020 decree through untimely motions after the decree was finalized, it is not clear to me how the February 23, 2021 order (which contained only a half a page of content) altered the decree, and how Appellant was thereby prejudiced.  Appellant has not explained how this "clarification" resulted in a different outcome from the decree or what Appellant's understanding was, as Appellant never compares the two documents.  While Appellee attempts to elucidate the matter, it is unclear to me if this is a correct summary of Appellant's objections to the clarification order, or how appealing from the clarification order could make Appellant hope to thereby be entitled to receive a cash payment of $70,527.00 which Appellee says Appellant was never entitled to in the first place.  The matter may be very clear to the parties and perhaps even the family court, but it was not clearly communicated to us.

loved at all." I believe it is better for a potentially meritorious appeal to be reviewed and lost on the merits for failure to plead the errors sufficiently (although I do not opine on the merits of this appeal at this juncture), than never to be reviewed at all. The parties deserve that much.

Accordingly, I dissent.


BRIEF FOR APPELLANT:          BRIEF FOR APPELLEE:

Patrick T. Flaherty                    Candy Yarbray Englebert
Owensboro, Kentucky               Owensboro, Kentucky