Mark DUWE, Andrew Bourdo, Mary Strosin, James Dragani, Rita Dragani, Amy Gehrke, Mary Baxa, Michael Baxa and Wisconsin Right to Life, Inc., Plaintiffs,

v.

James C. ALEXANDER, Larry Bussan, Ginger Alden, Donald Leo Bach, Jennifer Morales, John R. Dawson, Gregory A. Peterson, William Vander Loop, Michael R. Miller, James Haney and Keith L. Sellen, Defendants.

No. 06–C–766–S.

United States District Court,
W.D. Wisconsin.

May 29, 2007.

See, also, 2007 WL 840121.

Thomas J. Balistreri, Assistant Attorney General, Madison, WI, for Defendants.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Plaintiff Wisconsin Right to Life, Inc., a non-profit organization interested in surveying candidates for Wisconsin judgeships and publishing results of those surveys, commenced this action against members of the Wisconsin Judicial Commission to declare unconstitutional several Wisconsin Supreme Court Rules which regulate the conduct of candidates for judicial office. Individual plaintiffs are voters interested in seeing survey results. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343(a).

The matter is presently before the Court on defendants' motion to dismiss the complaint and plaintiffs' motion for summary judgment. The only factual dispute relates to whether plaintiffs have standing. All facts relevant to the merits of plaintiffs' claims are undisputed.

## BACKGROUND

The conduct of Wisconsin judges and candidates for judicial office is regulated by the Wisconsin Code of Judicial Conduct, Chapter 60 of the Wisconsin Supreme Court Rules, which includes the following provisions:

**SCR 60.04, A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently**

The judicial duties of a judge take precedence over all the judge's other activities. The judge's judicial duties include all the duties of the judge's office prescribed by law.

(1) in the performance of the duties under this section, the following apply to adjudicative responsibilities:

\* \* \*

(b) A judge shall be faithful to the law and maintain professional competence in it. A judge may not be swayed by partisan interests, public clamor or fear of criticism.

\* \* \*

(4) Except as provided in sub. (6) for waiver, a judge shall recuse himself or herself in a proceeding when the facts and circumstances the judge knows or reasonably should know establish one of the following or when reasonable, well-informed persons knowledgeable about judicial ethics standards and the justice system and aware of the facts and circumstances the judge knows or reasonably should know would reasonably question the judge's ability to be impartial:

\* \* \*

(f) The judge, while a judge or a candidate for judicial office, has made a public statement that commits, or appears to commit, the judge with respect to any of the following:

1. an issue in the proceeding.

2. the controversy in the proceeding.

\* \* \*

**SCR 60.05. A Judge Shall so Conduct the Judge's Extra–Judicial Activities as to minimize conflict with Judicial Obligations**

(1) **Extra-judicial Activities in General.** A judge shall conduct all of the judge's extra-judicial activities so that they do none of the following:

(a) Cast reasonable doubt on the judge's capacity to act impartially as a judge.

\* \* \*

## SCR 60.06. A Judge or Judicial Candidate Shall Refrain From Inappropriate Political Activity.

\* \* \*

### (3) Campaign Conduct and Rhetoric.

\* \* \*

(b) *Promises and commitments.* A judge, judge-elect, or candidate for judicial office shall not make or permit or authorize others to make on his or her behalf, with respect to cases, controversies, or issues that are likely to come before the court, pledges, promises, or commitments that are inconsistent with the impartial performance of the adjudicative duties of the office.

Judges and lawyers who violate these rules are subject to disciplinary action by the Wisconsin Judicial Commission and the Wisconsin Office of Lawyer Regulation, respectively. The Wisconsin Judicial Advisory Committee is authorized by the Wisconsin Supreme Court to render formal advisory opinions to judges and judicial candidates on whether their conduct complies with the ethical rules. However, these advisory opinions are not binding on the Judicial Commission or the Supreme Court.

On October 20, 2006 the Judicial Advisory Committee rendered opinion 06–1R addressing the following question:

May a judge publicly express a personal opinion as to the fairness, efficacy and wisdom of the death penalty which is the subject of an advisory referendum being presented to the citizens of Wisconsin?

The Committee determined that a judge expressing an opinion on these aspects of the death penalty would violate SCR 60.04(1)(b), 60.04(4), 60.05(1)(a) and 60.06(3)(b).

Plaintiff Wisconsin Right to Life is a non-profit organization that wishes to gather information from judicial candidates by sending them surveys and publishing the candidate responses. The individual plaintiffs are voters who wish to see the results of the surveys. In 2006 and 2007 plaintiff Wisconsin Right to Life sent surveys to each Wisconsin candidate for judicial office. A copy of the 2007 survey form is attached as exhibit A.

In both years several candidates returned the survey but declined to answer, checking a box on the survey and by reference adopting the statement that they were precluded from answering by SCR 60.06(3)(b) and 60.04(4)(f). One 2006 respondent wrote after each question: "Pursuant to SCR 60.06(3)(b)." One 2007 respondent wrote "I *would answer* if the law permitted." One judge who was a 2007 judicial candidate testified by affidavit that he was willing to answer all questions on the survey but believed he was prohibited by the provisions set forth above.

## MEMORANDUM

Initially, defendants move to dismiss the complaint for lack of jurisdiction because plaintiffs lack standing. Assuming plaintiffs are able to establish standing, the parties raise no factual dispute relating to the merits of the constitutional challenge to the Supreme Court Rules, making resolution of the constitutional challenge a matter for summary judgment.

*Standing*

■ Plaintiffs are not regulated by the challenged rules. Rather, they assert their First Amendment right as listeners to receive the speech of others. *King v. Federal Bureau of Prisons*, 415 F.3d 634, 638 (7th Cir.2005). In order to establish

standing to challenge a provision which limits speech, a would-be "listener" must demonstrate that there is a speaker who wishes to engage in the allegedly prohibited speech. *Spargo v. New York State Comm'n of Judicial Conduct*, 351 F.3d 65, 83–84, n. 19 (2d Cir.2003). To overcome a challenge to their standing plaintiffs must demonstrate by a preponderance of the evidence that there was a candidate willing to respond to the Wisconsin Right to Life survey at the time they filed the original complaint. *Perry v. Village of Arlington Heights*, 186 F.3d 826, 829–830 (7th Cir. 1999).

██ The facts before the Court are ample to establish that it is probable that candidates for judicial office were willing to answer the survey at the time this action was commenced. Most persuasive is the direct testimony of judge Alan White that he would answer all questions on the survey but believed he was precluded from doing so by the rules at issue. Defendants argue that this testimony is irrelevant because it comes after the case was filed and because the 2007 survey was not distributed until after the case was filed. The argument misapprehends the inquiry. The question is not whether the evidence was gathered after commencement of the case but whether a willing speaker existed at that time. It appears virtually certain that judge White was a willing speaker at the time the complaint was filed.

Furthermore, the combined responses to the 2006 and 2007 surveys support the conclusion that some minority of candidates would be willing to answer the survey questions in each election cycle. Although it is undoubtedly true that some candidates who refused to answer used the ethical rules as a handy justification, or simply adopted defendant's footnote without thought. Enough of the respondents affirmatively wrote their belief that they could not answer in light of the rules. It is likely that in any state wide judicial election there will be a willing speaker who is genuinely chilled by potential enforcement of the rules. The threat that the rules impose a chilling effect on to candidate speech existed in 2006, at the time of the filing of this action and will likely recur during the 2008 election because the relationship between the parties has remained intact over that period. See *Wisconsin Right to Life, Inc. v. Schober*, 366 F.3d 485, 491 (7th Cir.2004)(ongoing threat ended by altered legal relationship between the parties).

Accordingly, plaintiffs have demonstrated by a preponderance of the evidence that there are willing speakers who support their standing to raise a constitutional challenge to the rules.

*Constitutionality*

██ The challenges to Wisconsin's Supreme Court Rules governing the speech of judicial candidates requires a balancing between the First Amendment interests of candidates to express themselves on matters of interest to the electorate and the state's interest in assuring that its judges are impartial in the sense that they do not prejudicially favor one party to a controversy and that they remain open minded to decide cases in accordance with the law. *Buckley v. Illinois Judicial Inquiry Board*, 997 F.2d 224, 227 (7th Cir.1993); *Republican Party of Minnesota v. White*, 536 U.S. 765, 776–778, 122 S.Ct. 2528, 153 L.Ed.2d 694(2002).

██ The first step in analyzing the constitutionality of a provision is to discern its meaning. *White*, 536 U.S. at 770, 122 S.Ct. 2528. This involves interpreting the language of the rule itself and considering any meaning placed on the language by the Wisconsin Supreme Court. *Id.* at 771, 122 S.Ct. 2528. The interpretation issue is complicated by Wisconsin Judicial Advisory Committee opinion 06–1R, which ad-

dresses the meaning of several rules a tissue. While this opinion is not binding on the Wisconsin Supreme Court, the committee is appointed and authorized by the Court to interpret the rules. The parties vigorously dispute the degree of deference to be afforded the opinion. The proper level of deference for such opinions was addressed by the Eighth Circuit which noted that the relationship between the body and the Supreme Court makes it somewhat likely that the Court would adopt the holding and that at least it is a straw in the wind indicating the likely direction of the Supreme Court. *Republican Party of Minnesota v. Kelly*, 247 F.3d 854, 882 (2001)(issue mooted by Minn. Supreme Court adoption of interpretation prior to appeal to U.S. Supreme Court). Following this approach, the Court finds that the advisory opinion is relevant as a possible indicator of the direction of the Wisconsin Supreme Court's interpretation of the rule. The appropriate inquiry is whether on a particular issue, the Supreme Court would be likely to defer to the commission's opinion.

To the extent the interpretation reveals that a rule prohibits speech on the basis of its content and burdens speech about the qualifications of a candidate for public office the strict scrutiny test applies to determine its constitutionality. *Id.* at 774. To survive a challenge governed by strict scrutiny, defendants must prove that the challenged provisions are "(1) narrowly tailored, to serve (2)a compelling state interest." *Id.* at 775.

■ *SCR 60.04(1)(b).* "In the performance of ... adjudicative responsibilities: ... A judge may not be swayed by partisan interests, public clamor or fear of criticism."

This provision imposes no burden on a judicial candidate's right to speak freely during a judicial campaign. It addresses only conduct during the performance of "adjudicative responsibilities" which clearly would not include campaign activities. The obvious intent of the rule is to exhort judges to decide cases before them without considering prevailing public opinion and outcry regarding the case. Not only is this a valid and compelling state interest, it imposes no restriction outside of that context, and particularly does not restrict speech.

To the contrary, a judge's propensity to decide cases consistent with statements made or opinions expressed during a campaign tend to demonstrate that he or she is acting on personal principles previously stated and not deciding the pending case on the basis of "partisan interests, public clamor or fear of criticism."

The portion of opinion 06–1R addressing this provision is very limited and entirely unpersuasive. It can be summarized as follows: a judge expressing an opinion on the death penalty might be viewed as swayed by public opinion. Of course, this could be said of any statement on any issue or indeed any ruling on an issue in a case, since there is by definition conflicting public opinion and choosing one side leaves open the possibility that the decision was swayed by that interest. It is not a reasonable application of the rule, and almost certainly would not be adopted by the Wisconsin Supreme Court. The rule does not affect candidates' ability to respond to the Right to Life survey and is not facially unconstitutional.

■ *SCR 60.05(1)(a) A judge shall conduct all of the judge's extra-judicial activities so that they do [not] cast reasonable doubt on the judge's capacity to act impartially as a judge.*

This provision imposes a general prohibition against conduct that demonstrates that a judge lacks the ability to be impartial. The key interpretation issue is the meaning of the term "capacity to act im-

partially as a judge." Viewing the rule in context and in light of the Wisconsin Supreme Court's comment to the rule, it becomes clear that this provision does not regulate or restrict speech on legal issues, but applies to conduct that impugns the judge's general capacity for impartiality. The language of the provision itself is directed not toward impartiality in a particular case but to a general capacity to act impartially in the first sense explored in *White:* a lack of prejudice or bias against a person or class of people who might come before the court.

This meaning is confirmed by the official comment: "Expressions of bias or prejudice by a judge, even outside the judge's judicial activities, may raise reasonable doubt on the judge's capacity to act impartially as a judge." The comment then refers to SCR 6.03(1) and (3) which preclude a judge from membership in organizations that discriminate on the basis of race, gender, religion or national origin and require a judge to comply with the law and act in a manner that promotes public confidence in the judiciary. These references are consistent with the language that goes to the general reputation of a judge for integrity and impartiality, none of which are threatened by the expression of opinions on legal issues.

Furthermore, in the context of the Rule as a whole, it is apparent that the provision is not intended to and does not regulate statements on legal issues. The other subparts of SCR 60.05(1) preclude conduct that demeans the judicial office and interferes with the performance of judicial duties, both of which concern the judge's general conduct and would not implicate regulation of statement on legal issues. The immediately subsequent section of Rule 60.05 expressly authorizes judges to speak on legal issues, "subject to the requirements of this chapter." The quoted phrase being a reference to, inter alia,

Rule SCR 60.06(3) regulating campaign rhetoric. Accordingly, there is no doubt that regulation of speech on legal issues is not the subject of SCR 60.05(1).

Given the meaning of the Rule as confirmed by the official comment and overall context, it poses no threat to a judicial candidate's ability to express a position on legal issues or, more specifically, to respond to the Wisconsin Right to Life survey. Such statements or responses certainly would not be "expressions of bias or prejudice" as contemplated in the comment and would in no way cast doubt on the judge's general character for impartiality and integrity which is the subject of the Rule. At the same time the Rule protects a fundamental interest of the state in preserving the general impartiality and the appearance that its judges are impartial in the sense that they treat all parties coming before them equally.

The minimal discussion involving the Rule contained in advisory opinion 06–1 is unpersuasive and contradicted by the comment language. In light of its brevity and of the advisory opinion analysis on the issue, there is no reason to believe it would be persuasive to be adopted by the Wisconsin Supreme Court.

Properly understood, the Rule poses no threat to a candidate's interest in expressing a personal opinion on legal issues or plaintiffs' interest in hearing such speech. Rather, the rule protects a fundamental interest in protecting state courts from the appearance of inherent bias against a party.

*SCR 60.04(4). A judge shall recuse himself or herself ... when reasonable, well-informed persons knowledgeable about judicial ethics standards and the justice system and aware of the facts and circumstances the judge knows or reasonably should know would reason-*

*ably question the judge's ability to be impartial.*

Plaintiffs do not pursue a facial challenge to the constitutionality of this provision. In fact, similar rules have been widely upheld as Constitutional. *Indiana Right to Life, Inc. v. Shepard,* 463 F.Supp.2d 879, 887 (N.D.Ind.2006)(upholding similar Indiana rule and collecting similar cases from other jurisdictions).

There is also no indication that the provision has been or will be applied to respondents to the Wisconsin Right to Life survey. This is particularly true in light of the far more specific rules directly governing the propriety of a judge making statements on legal issues during judicial campaigns. Contrary to plaintiff's assertion, advisory opinion 06–1R did not suggest that the general provision in 60.04(4) would apply to the survey. Rather the opinion depended upon the specific requirement of 60.04(4)(a) relating to "personal bias or prejudice," a provision manifestly inapplicable to the survey.

 *SCR 60.06(3)(b). A judge, judge-elect, or candidate for judicial office shall not make, ... with respect to cases, controversies, or issues that are likely to come before the court, pledges, promises, or commitments that are inconsistent with the impartial performance of the adjudicative duties of the office.*

There is little ambiguity in the language of this provision. Most importantly, it is clear that the provision requires an actual commitment to rule a certain way on a case, controversy or issue likely to come before the court. The provision presents the precise question left open by *White,* whether a state may constitutionally prohibit a candidate from promising to decide an issue in a particular way if elected. 536 U.S. at 770, 122 S.Ct. 2528. More particularly, the issue is whether the state has a compelling interest in judicial openminded-ness of the type fostered by the rule and whether the rule is narrowly tailored to serve that interest. The Supreme Court implied that the interest is a compelling one.

> A third possible meaning of "impartiality" (again not a common one) might be described as openmindedness. This quality in a judge demands, not that he have no preconceptions on legal issues, but that he is willing to consider views that oppose his preconceptions, and remain open to persuasion, when the issues arise in a pending case. This sort of impartiality seeks to guarantee each litigant, not an equal chance to win the legal points in the case, but at least some chance of doing so. It may well be that impartiality in this sense, and the appearance of it, are desirable in the judiciary. ...

*White,* 536 U.S. at 778, 122 S.Ct. 2528. The Seventh Circuit has similarly indicated its belief that states may legitimately forbid judicial promises to rule a particular way. *Buckley,* 997 F.2d at 230.

There is a very real distinction between a judge committing to an outcome before the case begins, which renders the proceeding an exercise in futility for all involved, and a judge disclosing an opinion and predisposition before the case. A disclosure of a predisposition on an issue is nothing more than acknowledgment of the inescapable truth that thoughtful judicial minds are likely to have considered many issues and formed opinions on them prior to addressing the issue in the context of a case. *Id.* at 779, 122 S.Ct. 2528.

The Rule on its face is narrowly tailored to serve this openmindedness interest. The language of the rule avoids the successful vagueness, overbreadth, under inclusiveness and over inclusiveness challenges against other versions of rules pur-

porting to ban pledges and promises by judicial candidates.

Whether a statement is a pledge, promise or commitment is objectively discernable. It requires affirmative assurance of a particular action. It is a predetermination of the resolution of a case or issue. It is not a statement of belief or opinion. Absent a statement committing the speaker to decide a case, controversy or issue in a particular way, the speaker can be confident that the rule is not violated. The rule differs in a critical way from the predecessor ABA rule invalidated in Shepard: it eliminates the phrase "appears to commit." The vagueness of that phrase converts the provision into an alternate version of the announce clause condemned by White, because while a forceful opinion on an issue may "appear to commit" someone to an outcome, it is not a true commitment. The difference is not merely semantic. People are practiced in recognizing the difference between an opinion and a commitment (which explains why politicians typically stop short of the latter). A promise, pledge or commitment typically includes one of those three words or phrases like "I will" or "I will not." Phrases like "I believe" or "It is my opinion" signal the absence of commitment.

The distinction between a commitment and an announced position on an issue is relevant to the health of the judiciary. One presumes that a person is likely to decide in accordance with an opinion or belief, but will only rely upon an actual commitment. As a result, reaction to breaking a commitment or promise is far stronger than to a decision that contradicts an opinion or belief. A genuine commitment creates a different expectation and poses afar greater threat to the impartiality and appearance of impartiality of the judiciary.

The rule is neither over or under inclusive because it is appropriately directed only to judges and candidates. These are the only categories of persons who are in a position to make a promise to decide a case in a particular way. It makes no sense for individuals who are not judges or candidates to promise to decide cases in a particular way. The rule applies only to commitments which are inconsistent with the "impartial performance of adjudicative duties." Impliedly, a commitment to decide a case or issue in a particular way is offered in exchange for votes, a process which makes no sense for a non-candidate. Additionally, a non-candidate statement simply does not pose the same threat to the judiciary. An attempted regulation of hypothetical commitments by lawyers to rule a certain way if they were judges would be beyond the legitimate interest of the state to regulate and would unconstitutionally impinge on free speech rights.

■ Although the provision is not unconstitutional on its face, the apparently conflicting provisions of the Supreme Court comments and the opinion of the advisory committee present the possibility that the rule might be applied against those who respond to plaintiffs' survey. While the official comment first indicates that the rule prohibits only "statements that commit the candidate" it later uses the phrase "may reasonably be viewed as committing," leaving open the possibility that the Rule might be applied in an unconstitutionally overbroad manner. Responses to the Wisconsin Right to Life survey do not constitute promises, pledges or commitments such that they could be constitutionally restricted or sanctioned in the interest of judicial openmindedness. Responses to these questions are announcements constituting speech protected by the First Amendment as applied in White. 536 U.S. at 779, 122 S.Ct. 2528. SCR 60.06(3)(b) would be unconstitutional as applied to a judicial candidate who re-

sponded to the Wisconsin Right to Life survey.

■ *SCR 60.04(4)(f). a judge shall recuse himself or herself in a proceeding when.. the judge, while a judge or a candidate for judicial office, has made a public statement that commits, or appears to commit, the judge with respect to any of the following:*

1. *an issue in the proceeding.*
2. *the controversy in the proceeding.*

Unlike SCR 60.06(3)(b), the existence of the phrase "appears to commit" in SCR 60.04(4)(f) has the effect of requiring recusal in any case where a judge previously announced a position on an issue in the case. The inclusion of the phrase in a direct regulation of speech renders the provision unconstitutionally overbroad and vague, and indistinguishable from the announce clause condemned by *White*. *See Shepard*, 463 F.Supp.2d at 889–90. Defendants suggest two possible ways to distinguish the rule and save it from facial unconstitutionality. First, SCR 60.04(4)(f) is a recusal statute and therefore does not directly regulate speech. Second, defendants argue that the recusal rule is parallel to 60.06(3)(b) and that its more narrow scope should be imported by reference. Neither argument is persuasive.

While it is true that the recusal requirement is not a direct regulation of speech, the chilling effect on judicial candidates is likely to be the same. Although a candidate would not fear immediate repercussions from the speech, the candidate would be equally dissuaded from speaking by the knowledge that recusal would be mandated in any case raising an issue on which he or she announced a position.

As to the second argument there is no basis to ignore the language of the SCR 60.04(4)(f) based on the direct speech regulation of 60.06(3)(b). The provisions do not contain parallel language and therefore it must be presumed that they were intended

to have a different reach. It would not be irrational to permit a judge to speak, but to require recusal in the event the issue came before him or her. In any event, this Court is without authority to rewrite the language of the rule and as it is written it is unconstitutionally vague and overbroad.

### ORDER

IT IS ORDERED that defendants' motion to dismiss is GRANTED as it concerns plaintiffs' challenges to SCR 60.04(1)(b), 60.04(4) and 60.05(1)(a) and is in all other respects DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is GRANTED insofar as it seeks a determination that SCR 60.04(4)(f) is unconstitutional on its face and that SCR 60.06(3)(b) is unconstitutional as applied to judicial candidates based on their having responded to plaintiff Wisconsin Right to Life, Inc.'s survey and is in all other respects DENIED.

IT IS FURTHER ORDERED that judgment be entered declaring that SCR 60.04(4)(f) is facially unconstitutional, and enjoining enforcement of SCR 60.06(3)(b) against judicial candidates based on their having responded to the questions of plaintiff Wisconsin Right to Life, Inc.'s survey.